David NEWLIN, Petitioner–Appellant,

v.

David W. HELMAN, Respondent–Appellee.

Jesse E. ROBINSON, Plaintiff–Appellant,

v.

B. SMITH, et al., Defendants–Appellees.

James C. GRIFFIN, Plaintiff–Appellant,

v.

William R. HARRIS, et al., Defendants–Appellees.

Nos. 96–4229, 97–1627 and 97–2145.

United States Court of Appeals, Seventh Circuit.

Submitted July 3, 1997.

Decided July 23, 1997.

David Newlin (submitted), Pekin, IL, Plaintiff–Appellant Pro Se.

Jesse E. Robinson (submitted), Pendleton, IN, Plaintiff–Appellant Pro Se.

James C. Griffin (submitted), Westville, IN, Plaintiff–Appellant Pro Se.

K. Tate Chambers, Office of the United States Attorney, Peoria, IL, for Defendant–Appellee in No. 96–4229.

Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendants–Appellees in No. 97–2145.

Before POSNER, Chief Judge and EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Our court has issued a series of opinions—principally *Abdul–Wadood v. Nathan,* 91 F.3d 1023 (7th Cir.1996), *Martin v. United States,* 96 F.3d 853 (7th Cir.1996), *Thurman v. Gramley,* 97 F.3d 185 (7th Cir.1996), and *Robbins v. Switzer,* 104 F.3d 895 (7th Cir. 1997)—that resolve many issues presented by changes the Prison Litigation Reform Act made to 28 U.S.C. § 1915, which governs litigation *in forma pauperis.* A formidable number of questions remains, given the complex sequence of gatekeeper tasks created by the law. This opinion takes up a few of these questions, presented by three cases that we have consolidated for disposition. The common denominator is that in none of the three did the district court assess or collect a filing fee under the PLRA.

## I

█ James Griffin filed suit under 42 U.S.C. § 1983 against persons involved in a criminal prosecution against him in Indiana. The criminal charges were dismissed on December 23, 1994, so suit is proper under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Griffin was convicted on other charges, however, and will be a prisoner of Indiana for a long time to come. *Heck* establishes that the period of limitations began on the date the charges were dismissed. *Id.* at 489–90, 114 S.Ct. at 2373–74. Section 1983 suits in Indiana must commence within two years after the claim accrues. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir.1995). Griffin filed his complaint in February 1997—too late, the district judge held. She dismissed the suit. When Griffin filed a notice of appeal and asked for leave to proceed *in forma pauperis*, the district court held that he is not eligible for that status because the appeal is not in good faith. See § 1915(a)(3): "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

█ Our first question is whether such a finding is proper when the plaintiff is a prisoner. One circuit has held that it is not, observing that § 1915(b)(1) now begins: "Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." According to *McGore v. Wrigglesworth*, 114 F.3d 601, 610–11 (6th Cir.1997), and *Floyd v. United States Postal Service*, 105 F.3d 274, 277–79 (6th Cir.1997), this notwithstanding clause makes all of subsection (a) inapplicable to prisoners, who therefore may appeal *in forma pauperis* even if the appeal is in bad faith. We join the fifth circuit, see *Baugh v. Taylor*, 117 F.3d 197 (5th Cir. 1997), in disapproving this conclusion. The sentence does not say that all of subsection (a) is inapplicable to prisoners. It addresses a particular element of subsection (a), concerning the collection of the filing fee, and provides that prisoners (unlike other plaintiffs) always must pay in full, although other parts of subsection (b) permit much of the payment to be deferred. *Baugh* offers additional support for this conclusion, which we adopt without the need for repetition.

█ We may review the district court's certification on motion filed within 30 days. Fed. R.App. P. 24(a) ¶ 3. (Like *Baugh*, we hold that this portion of Rule 24 is compatible with the PLRA.) Must this review await assessment and collection of a partial filing fee under the second sentence of § 1915(b)(1)?: "The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of [an amount determined by formula]." We said in *Martin*, 96 F.3d at 856, that a fee must be assessed and paid before the court of appeals determines whether the appeal will be dismissed as frivolous under § 1915(e)(2)(B)(i), explaining:

> Congress wanted to relieve the pressures on the federal courts of frivolous suits by prison inmates and we can best achieve that purpose by insisting on payment in advance in every case in which that is feasible. To be content with trying to collect the fee after dismissing the suit as frivolous would be an inferior alternative, since by that time the prisoner will often not be able to pay even if he had the means to pay when he filed the appeal.

Does this carry over to findings under § 1915(a)(3)? The reasoning surely does, but the statutory language and structure are different. Dismissal under § 1915(e)(2) occurs after the appellant has been allowed to pursue an appeal; action under § 1915(a)(3) occurs at the outset.

The partial-prepayment mechanism under § 1915(b) applies only when a prisoner has been allowed to proceed *in forma pauperis*. The district judge uses the screening mechanism of § 1915(a)(3) to determine whether an inmate may so proceed; otherwise full payment is essential. A prisoner is bound to owe *at least* the initial partial payment, whether or not the court of appeals agrees with the district court's application of § 1915(a)(3), so one could ask: Why not insist on payment of that sum? Sensible though that may be, the language of the statute does not bear a reading requiring a prisoner who at the moment is not allowed to

proceed *in forma pauperis* to satisfy a requirement laid on one who has that status. A would-be appellant may ask us to review a decision under § 1915(a)(3) without first satisfying the PLRA's partial prepayment requirement; at the time he asks, the whole PLRA–IFP structure has been ruled to be inapplicable. So like the fifth circuit in *Baugh* we hold that review by a Rule 24(a) motion may precede assessment and collection. But the concomitant understanding must be that if the plaintiff files a notice of appeal in addition to a Rule 24(a) motion (as Griffin has done), indicating an unconditional desire to appeal whether or not the fee will be deferred, the appellant irrevocably incurs an obligation to pay the fee. If we sustain the district court's decision, then the $105 filing and docket fees are due immediately; if we reverse the district court's decision, then the PLRA applies, and the fee must be assessed and paid (at least in part) under the PLRA regimen before any further judicial consideration occurs. Congress likely did not appreciate that application of § 1915(a)(3) may make it harder to collect the filing fees, but that's the way the statute reads.

■ Well, is this appeal in bad faith? That Griffin wants $20 million in damages from defendants who have absolute or qualified immunity, and is undaunted by knowledge that the suit is untimely, suggests that the answer is "yes." Relying on *Williams v. Leach*, 938 F.2d 769 (7th Cir.1991), and *Lucien v. Roegner*, 682 F.2d 625 (7th Cir.1982), the district judge held that appeal would be frivolous, and therefore could not proceed *in forma pauperis*. The judge appears not to have noticed that these cases deal with a portion of § 1915 that was altered by the PLRA. Under the former § 1915(d), a district judge could knock out an appeal by certifying that·it was frivolous. Under the amended statute, the district court's only role with respect to appeals is determining whether the appeal was taken in "good faith." Frivolousness is an objective inquiry; "good faith" implies a subjective standard. But judges lack access to the plaintiff's mental processes. Thoughts must be inferred from acts. A plaintiff who has been told that the claim is foreclosed and then files a notice

of appeal without offering any argument to undermine the district court's conclusion is acting in bad faith. Griffin has not given either the district judge or us any reason to doubt the conclusion that it was filed too late. So the appeal is indeed in bad faith. District judges should take care, however, to distinguish the criteria of § 1915(e)(2), which they may apply when evaluating requests to proceed *in forma pauperis* in their own courts, from the criterion of § 1915(a)(3), which applies once the plaintiff seeks to appeal.

■ The district court dismissed Griffin's suit for failure to state a claim on which relief may be granted. That makes the disposition a "strike" under § 1915(g). The appeal is frivolous, which also satisfies § 1915(g). Does Griffin now have one strike, because these are sequential proceedings in a single case, or two strikes, because complaints and appeals are evaluated separately? Two strikes, we think. Section 1915(g) reads:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Under this language, bringing an action and filing an appeal are separate acts. One could be frivolous, the other not. Having been told that his complaint is frivolous, a prisoner must decide whether to appeal. Prisoners who learn from their mistakes will suffer·one strike, at most, in a case. Obstinate or malicious litigants who refuse to take no for an answer incur two strikes. Accord, *Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996). That approach not only comports with the statutory language but also fortifies the deterrence of frivolous activities in litigation.

■ Next in line comes a series of questions about payment. What happens to the $105 filing and docket fees, now that Griffin

has been disqualified from proceeding *in forma pauperis* on appeal? How does this interact with collection of the filing fee from the district court? Because Griffin cannot defer payment of the appellate fees, he must pay them in full immediately. If he does not remit $105 within 14 days, his appeal will be dismissed for failure to pay the fees. See Circuit Rule 3(b). Whether or not the appeal is dismissed, however, Griffin *owes* $105 to the United States. That obligation is incurred by filing a notice of appeal; it cannot be avoided by dismissing the appeal, or by failing to pay when the fees are due. And we think that the fee may be collected from the prisoner's trust account using the mechanism of § 1915(b). Although that mechanism is principally designed to handle partial *pre*-payments of fees, the lead sentence of § 1915(b)(1), which we have already quoted, says that the prisoner who "files an appeal *in forma pauperis*" must pay in full using the progress-payment approach. We read this language to mean "files an appeal, and seeks to proceed *in forma pauperis*". Whether the prisoner receives that boon is determined later; whether he had an obligation to pay is determined at the instant he files the appeal. Any other reading would mean that the weakest, most malicious appeals would escape effective collection, while prisoners with more substantial claims would have to pay in full. That would not be a plausible understanding of the PLRA.

■ So the $105 must be collected from Griffin's prison trust account. Who applies the statutory formula and collects the fee— the district court, or the court of appeals? Effort by the circuit clerk's office to perform screening rarely led to more than an order that the district clerk's office undertake some additional step toward assessment and collection, followed by confusion about mundane questions such as whether (and when) the district clerk complied, and whether the appellant has paid up. Complex interactions, and much paper shuffling, would be avoided if the whole job of assessing the fee were left to the district court—which will have gone through the exercise when the suit was filed, and therefore has the documents (and the contacts with the people administering prison

trust funds) necessary to make the system work.

The PLRA does not say which tasks belong to the district court and which to the court of appeals. It provides that the prisoner must submit documents and pay fees, but it does not say to whom. But Fed. R.App. P. 3(e), which makes the clerk of the district court the collector of fees ("Upon the filing of any separate or joint notice of appeal from the district court, the appellant shall pay to the clerk of the district court such fees as are established by statute, and also the docket fee prescribed by the Judicial Conference of the United States, the latter to be received by the clerk of the district court on behalf of the court of appeals."), suggests that the entire task belongs to the district clerk. In order to determine what fees have been established by statute, the district clerk must apply the rules of the PLRA. From now on, this court will rely on the clerks of the district courts to perform all assessment-and-collection tasks under the PLRA. Accord, *McGore*, 114 F.3d at 611; *Jeffery v. Walker*, 113 F.3d 527 (5th Cir.1997). Contra, *Leonard v. Lacy*, 88 F.3d 181, 186–87 (2d Cir. 1996). Our court will docket an appeal after receiving the notice of appeal (Fed. R.App. P. 3(a) says that "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal") but put things into stasis until receiving notice from the district court that any necessary fee has been assessed and, if assessed, paid. (By "paid" we mean the initial payment under § 1915(b)(1), not the further progress payments under § 1915(b)(2).) To prevent litigation from getting lost, district clerks should give prison authorities no more than 30 days to make initial payment, and should alert the district judge if a prison does not remit. A prison that fails to meet its statutory obligation to turn over proceeds of trust accounts faces legal difficulties of its own. No later than 60 days after the filing of the notice of appeal, the district clerk must notify this court how things stand under the PLRA. If an assessed fee remains unpaid by that time, the appeal will be dismissed for

want of prosecution unless the appellant seeks an extension.

█ How much, and how soon, must Griffin pay? That depends on whether the district and appellate fees must be paid simultaneously or sequentially. The task of calculating Griffin's obligation has been complicated by the district court's failure to assess and collect *any* fee before dismissing Griffin's complaint. After reviewing an affidavit in which Griffin stated that he has no assets yet receives $43 per month from prison employment, the district court wrote that "even the assessment of a partial filing fee at this time is not feasible. 28 U.S.C. § 1915(b)(4)." The court then adjudicated the case on the merits without collecting even a partial fee and, as far as we can see, has made no effort to collect anything since.

This does not comport with the PLRA. Section 1915(b)(4) reads: "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." This does not exonerate the plaintiff from payment; it excuses only the "initial partial filing fee". If filing without an initial payment was proper, then, the district clerk should have followed up. But it was not proper. It is not enough that the prisoner lack assets on the date he files. If that were so, then a prisoner could squander his trust account and avoid the fee. Section 1915(b)(4) comes into play only when "the prisoner has no assets *and no means* by which to pay the initial partial filing fee." A prisoner with periodic income has "means" even when he lacks "assets." Griffin told the district court that he received $43 per month, and the statutory formula therefore required him to prepay part of the filing fee before the district court considered the merits of the case in any fashion. We disapprove the conclusion of *McGore,* 114 F.3d at 606, that the court may assess the partial fee and proceed before anything has been paid. Its approach disregards the requirement of § 1915(b)(4) that the prisoner lack both assets and means. The sixth circuit has concluded generally, see *McGore,* 114 F.3d at 607–08, that cases may proceed to decision after assessment but before even the initial payment. That conclusion is inconsistent with our holding in *Martin,* to which we adhere. See also *Strickland v. Rankin County Correctional Facility,* 105 F.3d 972, 975 & n. 2 (5th Cir.1997).

█ Griffin filed in this court a statement of his prison trust account. It shows that, on the date suit was filed, Griffin had $1.16 in the account, having spent $18.16 shortly before on commissary purchases. A few days after suit began the account was credited with $41.33 in wages for prison work; Griffin emptied the account the next day with commissary purchases. The pattern continued through the date of the statement. The prison's law library supervisor, who certified the statement of account, calculated that Griffin had an average monthly balance of $43.00 during the prior six months. This is incorrect; the average *balance* was close to zero, though Griffin had average monthly *income* of $43. The difference does not matter to the statute, however. Griffin should have been assessed $8.60 as an initial partial fee under § 1915(b):

... The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of

the average monthly deposits to the prisoner's account; or

the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

The assessment of $8.60 should have been immediate, and its collection should have come off the top of the next deposit of prison wages, followed by 20 percent of each succeeding month's income until $150 has been

paid. Whether Griffin authorized the prison to disburse the money is neither here nor there. How much a prisoner owes, and how it will be collected, is determined entirely by the statute and is outside the prisoner's (and the prison's) control once the prisoner files the complaint or notice of appeal. *Baugh* and *McGore* agree on this point, and we join their conclusion. See also *Ballard v. Burrage*, 97 F.3d 382, 383 (10th Cir.1996).

■ Under the statute, Griffin owes another $8.60 per month for the appellate fees, until $105 has been paid. Does this come *after* the payment of $150 for filing the complaint, or is the appellate fee an additional 20 percent per month, so that the prison must be instructed to remit $17.20 per month? The statute does not tell us whether the 20 percent-of-income payment is per case or per prisoner. Just as we concluded that the complaint and the appeal can produce two strikes in a single case, so we hold that the fees for filing the complaint and appeal cumulate. Otherwise a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and likely avoiding them altogether). The PLRA is designed to require the prisoner to bear some marginal cost for each legal activity. Unless payment begins soon after the event that creates the liability, this will not happen. A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on. Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid—though by then a prisoner is likely to have three strikes and to owe all future filing fees in full, in advance.

The upshot is that the district clerk must assess and collect $17.20 from Griffin's prison trust account, and the prison must be instructed to remit $17.20 per month for another 11 months (after which most of the appellate fees will be paid), $10.40 the next month (finishing up the appellate fee), and then $8.60 per month until the district court's filing fee has been paid in full. If Griffin's monthly income changes, these figures will change too. That task of calculation belongs to the prison, under the watchful eye of the district clerk.

## II

In *Robinson v. Smith*, No. 97–1627, the district court had a different reason for declining to assess and collect a partial payment: the court found that Robinson had filed three frivolous actions *in forma pauperis* and is therefore barred by § 1915(g) from filing any further civil actions without prepaying the full fee, "unless the prisoner is under imminent danger of serious physical injury", which Robinson does not claim to be. Robinson did not pay the docket fee but filed an appeal, which the district court certified under § 1915(a)(3) not to be in good faith. Robinson asks us to allow him to proceed *in forma pauperis*.

■ As we see things, once a district court invokes § 1915(g), there is no further role for § 1915(a)(3) to play. Plaintiff cannot appeal *in forma pauperis* even if the appeal is in the best of faith—for § 1915(g) applies to the appeal as well as to the complaint in the district court. A prisoner who accumulates three strikes loses for the duration of imprisonment the right to proceed *in forma pauperis*, unless there is "imminent danger of serious physical injury". Alas, however, district judges are not infallible. Perhaps the judge has misclassified or miscounted the prior cases. It follows that a prisoner may file an appeal to contest the district court's conclusion that he is ineligible to proceed *in forma pauperis*. For the reasons given when discussing Griffin's appeal, this contention may be presented to and resolved by this court without a partial prepayment under the terms of § 1915(b).

■ Appeal is risky nonetheless, for if we affirm then the plaintiff owes two fees—one for filing the complaint, another for filing the appeal. These must be paid in full. What is more, a plaintiff who has lost the right to proceed *in forma pauperis* also has lost the right to defer payment under § 1915(b). Section 1915(g) says that a disqualified litigant loses the right to proceed "under this section"—that is, all of § 1915. The fee must be paid, and paid now. To permit

deferral would defeat the function of § 1915(g), for it would give prisoners who have abused the privilege (those to whom § 1915(g) applies) the same rights as prisoners who have not. If slow collection is not available, how then is payment to be ensured? The best answer we can conceive lies in the mechanism devised by *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.1995), to collect sanctions from recalcitrant litigants. A prisoner who becomes ineligible under § 1915(g) to continue litigating *in forma pauperis*, and who then files additional suits or appeals yet does not pay the necessary fees, loses the ability to file future civil suits. Cf. *Thurman*, 97 F.3d at 188. An order under *Mack* requires the clerks of the courts within this circuit to return civil complaints unfiled, without even presenting them to judges, until the plaintiff's debt to the judicial system has been paid. One circuit has decided to enjoin further litigation until the fees have been paid, see *Schlicher v. Riddle*, 111 F.3d 777 (10th Cir.1997), but *Mack* explains why its approach (which *Schlicher* does not discuss) is preferable to anti-suit injunctions.

Let us see, then, whether the district court's application of § 1915(g) is erroneous. Robinson has filed an appeal and docketing statement. These papers affect outrage but do not take issue with the basis of the district court's ruling. Here is a sample: "By a copy of its September 25, 1996 purported judgment herein this case, this 'tribunal' is a Fraud—an IMPOSTOR, and has stepped into the path of justice in an attempt to delay, or otherwise interfere with such in an illegal manner". There is more in the same vein. Invective is a poor substitute for analysis, and we have no reason to doubt the district court's conclusion that Robinson has filed at least three prior frivolous actions, and lost the ability to proceed *in forma pauperis*. The judgment dismissing his case is affirmed, and fees of $225 ($120 for filing the complaint, $105 for filing the appeal) are due forthwith. (The fee was raised from $120 to $150 between the dates Robinson and Griffin filed their complaints.) Until this sum has been paid in full, clerks within this circuit will return to Robinson any further papers under the approach set up in *Mack*

(including the exceptions and limitations of that opinion).

### III

Finally we turn to *Newlin v. Helman*, No. 96–4229. Newlin is a relatively affluent prisoner. Deposits to his trust account in the six months preceding his appeal exceeded $650. But like most inmates he has arranged affairs so that the cupboard is bare most of the time; his money flows out (usually via $20 postal money orders) as fast as it flows in. The district court permitted Newlin to proceed *in forma pauperis* but neither assessed a fee under § 1915(b) nor explained why it was disregarding the PLRA.

Newlin was sentenced for a federal offense and released on parole (his crime preceded November 1, 1987, so he is covered by the old parole rules despite the Sentencing Reform Act of 1984). While on parole he was convicted of a new crime in Ohio. The Parole Commission revoked his parole, lodged its order as a detainer with Ohio authorities, and took custody of Newlin when his Ohio sentence expired. Newlin filed a petition for a writ of habeas corpus seeking release. He makes two claims: that the Parole Commission has miscalculated his mandatory release date, and that he should be reparoled under the Commission's reparole guidelines.

Newlin filed a "civil action" (§ 1915(a)(2)), and the PLRA therefore presumptively applies. *Martin* holds that applications for habeas corpus by state prisoners under 28 U.S.C. § 2254, or petitions under 28 U.S.C. § 2255, the analogous statute for federal prisoners, are hybrids outside the ambit of the "civil action" governed by the new law. 96 F.3d at 855–56. Petitions under § 2254 and § 2255, we concluded, are functional continuations of the criminal prosecution, and multiple collateral attacks are governed by amendments to 28 U.S.C. §§ 2244(b) and 2255 made by the Antiterrorism and Effective Death Penalty Act, rather than by § 1915(g). *Thurman* held that the same treatment is appropriate when a federal prisoner mistakenly uses § 2241 in place of § 2255. But we added, 97 F.3d at 187 (em-

phasis in original): "A *proper* § 2241 action, concerning conditions of confinement, a deprivation of good time credits, or other matters that occur at the prison, by contrast, would not be a continuation of the criminal case, and it would be subject to the Act." Contra, *McIntosh v. United States Parole Commission,* 115 F.3d 809 (10th Cir. 1997).

Complaints about denial of parole, revocation of parole, and the like, do not affect the validity of the criminal sentence, and this litigation therefore cannot be called a functional continuation of the criminal prosecution. See U*nited States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Parole affects the duration of confinement, but it is in this respect no different from other post-conviction events such as the revocation of good time credits on account of misconduct in prison, a subject that we said in *Thurman* leads to a "civil action" for purposes of the PLRA. Successive challenges to the same parole decision or revocation of good time credits are rare if not nonexistent, so the prospect of a clash between § 2244(b) and § 1915(g) that motivated our conclusion in *Martin* is not a problem for normal § 2241 litigation.

■ Newlin's parole was revoked, and his reparole deferred, on account of post-sentencing misconduct—misconduct while Newlin was at liberty in Ohio, rather than while he was a prisoner, but the key for our purpose is that this all has to do with post-sentencing events unrelated to the validity of the conviction and sentence. A prisoner who wants judicial review of the Parole Commission's decisions is like the plaintiff in a civil action under the Administrative Procedure Act—although the APA does not apply to the Parole Commission's decisions, it does apply to the Bureau of Prisons, see *White v. Henman,* 977 F.2d 292 (7th Cir. 1992), and therefore may be an appropriate way to contest the Bureau's calculation of a sentence's terminal date. All that matters today, however, is that Newlin's suit is a "civil action".

Because the PLRA applies, we will proceed no further until Newlin has paid at least 20 percent of the average monthly deposit to his prison trust account. For reasons already given, the task of assessing and collecting this fee belongs to the district clerk, and we will defer action until being notified by the clerk that Newlin has paid. The clerk also should assess and collect the fee Newlin owes for filing this action in the district court.

## IV

In sum: (1) The district court's certification that Griffin's appeal is not taken in good faith is affirmed. Griffin therefore cannot prosecute the appeal *in forma pauperis.* Unless he pays the appellate fees of $105 within 14 days, his appeal will be dismissed for want of prosecution. Whether or not Griffin pays that sum, the district clerk must assess and collect the appropriate filing fees. Two strikes under § 1915(g) are recorded against Griffin. (2) The judgment that Robinson must prepay the filing fee in the district court because he has struck out under § 1915(g) is affirmed, and a *Mack* order is entered, to remain in force until Robinson has paid $225. (3) Further consideration of Newlin's appeal is deferred until the appellate fee has been assessed, and the initial installment collected, by the district court.