**James H. HIGGASON, JR., Plaintiff,**

v.

**Karl SWIHART, et al., Defendants.**

**No. 3:93–CV–0805 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 23, 1997.

James H. Higgason, Jr., Carlisle, IN, pro se.

Anthony W. Overholt, Office of Indiana Attorney General, Indianapolis, IN, for Defendants.

*MEMORANDUM AND ORDER*

ALLEN SHARP, District Judge.

Plaintiff James Higgason filed a notice of appeal in this action and a petition to proceed *in forma pauperis* on appeal. The court reviewed Mr. Higgason's petition to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act ("PLRA"), determined that Mr. Higgason had already paid an adequate initial partial filing fee, and directed Mr. Higgason's custodians to forward "payments of twenty percent of the preceding month's income credited to the plaintiff's account ... each time the amount in the account exceeds $10.00 until such time as the full amount of the $105.00 filing fee is paid." This matter is now before the court on two motions for sanctions filed by the plaintiff, arising from a squabble between himself and prison officials on the amount of money that has been withdrawn from his account and the amount he

---

has paid towards the appellate filing fee in this action.

Mr. Higgason voluntarily tendered an initial partial filing fee of $20.00 before the court ruled on his petition to proceed *in forma pauperis*. On October 8, 1996, this court entered an order accepting the initial partial filing fee as adequate and ordering Mr. Higgason to make installment payments on the balance of the amount owed on the filing fee. The records of this court show that Mr. Higgason has been credited with three installment payments; a payment of $9.62 on May 19, 1997, a payment of $8.00 on June 16, 1997, and a payment of $4.00 on July 3, 1997. According to the court's records, Mr. Higgason has paid a total of $41.62 towards the appellate filing fee of $105.00 and owes a balance of $63.38. The complaint in this case was filed before the PLRA went into effect, and the only filing fee upon which Mr. Higgason is making installment payments to the clerk of this court is his appeal in this case.

Mr. Higgason is confined at the Wabash Valley Correctional Facility ("WVCF"). In his motions for contempt orders, Mr. Higgason asserts that WVCF officials have taken money from his account in excess of that authorized by this court's order and the PLRA, and that they have only credited him with a $12.00 initial partial filing fee, which will eventually result in WVCF sending $113.00 to this court from his account rather than $105.00. The defendants have not responded to these motions.

The PLRA amended 28 U.S.C. § 1915, which governs granting *in forma pauperis* status to a party in a civil action, to provide that a prisoner who files a civil action, or appeals the dismissal of a civil action, must pay an initial partial filing fee, *see* 28 U.S.C. § 1915(b)(1), and then must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." 28 U.S.C. 1915(b)(2). The United States Court of Appeals for the Seventh Circuit has held that district courts and their clerks are responsible for assessing initial partial filing fees for prisoner appeals and monitoring the installment payments toward paying appellate filing fees, *Newlin v. Helman*, 123 F.3d 429, 435–36 (7th Cir.1997).

Mr. Higgason first alleges that WVCF officials credited him with an initial partial filing fee of $12.00 instead of $20.00, which means that they will ultimately send more than $105.00 to the court from Mr. Higgason's trust account. The defendants have not responded to Mr. Higgason's motions, but documents submitted by Mr. Higgason establish that as of July 3, 1997, WVCF official Lauri Tharp advised Mr. Higgason that the institution's records showed him as having been credited with payments toward the filing fee of $12.00,[1] $9.62, $8.00, and $4.00. The Tharp memorandum further advised Mr. Higgason that "(a)s of this date [July 3, 1997], the balance due for Cause # 3:93–CV–0805 AS is $71.38." This court's records establish that on July 3, 1997, Mr. Higgason's balance due was $63.38. Accordingly, the court concludes that Mr. Higgason's allegation that the WVCF's records are off by $8.00, to his detriment, are correct.

■ The court declines, however, to find WVCF officials in contempt on this record. There is no indication in the record that WVCF officials intentionally overcharged Mr. Higgason, and the court is aware of the administrative quagmire the PLRA has created for prison officials and district court

---

1. Because Mr. Higgason's initial partial filing fee payment was voluntary and preceded this court's ruling on his petition to proceed *in forma pauperis,* WVCF officials may not have been aware that he had made that payment on the appellate filing fee in this case. Lori Tharp's memorandum establishes that the WVCF only credited Mr. Higgason with any payments on the filing fee of this appeal "after receiving notification of the Court Ordered filing fees" on October 21, 1997. The Tharp memorandum explains the $12.00 adjustment on June 19, 1997, with the notation "see attached copy from court," but the copy of the memorandum submitted by the plaintiff contains no attachment. In any event, the materials before the court establish that Mr. Higgason made a $20.00 initial partial filing fee payment and that the WVCF has only given him credit for a $12.00 payment.

clerks in tracking inmate payments towards filing fees. The court will advise WVCF officials that Mr. Higgason paid an initial partial filing fee of $20.00 and that the balance owing on July 3, 1997, and currently, is $63.38, and trusts that they will alter their records accordingly. In the event that prison officials overpay Mr. Higgason's filing fee in this appeal, the clerk of this court will refund the overpayment to Mr. Higgason in accordance with 28 U.S.C. § 1915(b)(3), which provides that "(I)n no event shall the filing fee collected exceed the amount of the fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment."

■ Mr. Higgason next claims that WVCF officials have been taking more than 20% of the monthly deposits to his account when making installment payments on his behalf. In discussing the PLRA's progress-payment approach, the Seventh Circuit observed that "(h)ow much a prisoner owes, and how it will be collected, is determined entirely by the statute and is outside the prisoner's (and the prison's) control once the prisoner files the complaint or notice of appeal." *Newlin v. Helman*, 123 F.3d at 436. Under the *Newlin* analysis, the application of the § 1915(b)(2) to Mr. Higgason's situation is simple; a prisoner who files one suit or appeal "remits 20% of income to his prison trust account." *Newlin v. Helman*, 123 F.3d at 436. Under the PLRA, this court was required to direct Mr. Higgason's custodians to send 20% of the monthly income to his inmate trust account to the clerk of the court for this appeal, and the court entered such an order. Prison officials have no authority under this court's order, the PLRA, or any other source, to send more than 20% of Mr. Higgason's monthly income to the clerk to pay off the

filing fee for his appeal. To the extent they have done so, they acted without legal authority.

Mr. Higgason alleges that on May 14, 1997, the WVCF Business Office "deducted $9.62 from Higgason's inmate trust account and forwarded it to the clerk of the court ... $9.62 is 48% of Higgason's monthly income, which was a total of $20.00 from 2/24/97 to 5/9/97." Mr. Higgason further asserts that "from 5/10/97 to 6/6/97, there was a total of $20.00 credited to Higgason's trust fund account ... [and] ... on 6/9/97, the Business Office deducted $8.00 from ... [the account, which is ] ... 40% of Higgason's $20.00 monthly income from 5/10/97 to 6/6/97." Finally, Mr. Higgason asserts that despite the fact that he "received no additional income from 6/9/97 to 6/30/97," on June 30, 1997, the WVCF Business Office "deducted another $4.00 from Higgason's inmate trust fund account." Mr. Higgason contends that the $12.00 that was taken from his account on and after June 9, 1997, amounts to 60% of the $20.00 that Mr. Higgason received on June 6, 1997.

Mr. Higgason has submitted the record of his inmate trust account activity from January 1, 1995 through July 3, 1997. Although input from the defendants would have been helpful in deciphering certain aspects of this record, most of the entries are self explanatory and generally support Mr. Higgason's contentions.[2]

According to his trust account records, WVCF officials debited Mr. Higgason's account for $20.00 for "US DISTRICT COURT" on September 26, 1996, which appears to reflect the initial partial filing fee received by the clerk of this court on October 2, 1996.[3] After the payment of the initial

---

**2.** Credits to Mr. Higgason's account are signified by a "C," and the source of the credit is noted. Debits to the account are signified by a "D" with brief explanations such as "COMM" (commissary), "POSTAGE," or "PARTIAL FILING FEE." There are also entries denoted "ADJ" (adjustment); in the absence of fuller explanation by the defendants, the court does not construe positive adjustments to Mr. Higgason's trust account as income within the meaning of the PLRA.

**3.** The trust fund account actually shows debits of $15 and $20 to "US DISTRICT COURT" on

September 26, 1996, and a $5 debit to "CLERK U.S. DISTRICT COURT" on October 10, 1996. There are also debits showing payments to U.S. district courts predating the filing of this appeal, and one of these debits even predates the enactment of the PLRA. There is no notation as to which district court these payments went, or what cause numbers they were in payment for. The plaintiff's submissions and this court's records establish, however, that the $20 received by this court on October 2, 1996, and each of the

partial filing fee, Mr. Higgason's account shows no credits until February, May, and June, 1997. The court will review these deposits and the payments sent by the WVCF to this court in reverse order of receipt.

Mr. Higgason received a $20.00 credit from Manny Bejar[4] on June 6, 1997, which was his only income for the month of June. Giving WVCF officials the benefit of every inference, the withdrawal of $4.00 from his account on June 30, 1997, is precisely 20% of his June income.

WVCF officials also withdrew $8.00 from Mr. Higgason's account on June 9, 1997. Giving the officials the benefit of the doubt, the court will assume that this payment may have been intended to reflect Mr. Higgason's deposits from the previous month. In May, however, Mr. Higgason's total income consisted of a single $20.00 deposit in his account by M. Bajar, and there were no deposits to his account in April. Even giving officials the benefit of every doubt, the $8.00 payment in early June constituted 40% of Mr. Higgason's May income.

WVCF officials made a $9.62 payment to the clerk of this court on May 14, 1997, which the court could construe as reflecting deposits to Mr. Higgason's account in April, except that there were no deposits to Mr. Higgason's trust account in April. The only credit to Mr. Higgason's account between January 1, 1997, and the end of April was a $30.00 credit from Manny Bejar on February 20,

1997. But even if the $9.62 payment was based on this deposit, it constitutes over 20% of the deposit.

Mr. Higgason's trust account records and this court's records establish that as of July 3, 1997, WVCF officials had sent the court $21.62 out of Mr. Higgason's total yearly income to that date of $70.00 No matter how the court crunches these numbers, it appears that WVCF officials have sent more than 20% of Mr. Higgason's 1997 income to the clerk of this court on this filing fee.[5]

As previously noted, the court is aware of the administrative problems created for lower ranking prison administrators by the PLRA's progress-payment scheme.[6] The WVCF Business Office now appears to have a system in place to track these matters, and the most recent payment to the court apparently extracted the appropriate percentage of Mr. Higgason's June 6, 1997 deposit. Hopefully, any problems in the collection process before that date have now been resolved, and the court declines to find WVCF officials in contempt of this court's order based on this record.

Giving Mr. Higgason the benefit of the doubt regarding the September 18, 1996, deposit, however, the fact remains that WVCF officials sent more than 20% of the 1997 income to Mr. Higgason's trust account to the clerk of this court, thereby exceeding their authority under this court's order and the provisions of the PLRA. Mr. Higgason's

debits to Mr. Higgason's trust account in 1997 were applied to pay the filing fee in this appeal.

4. All of the deposits to Mr. Higgason's account in 1997, and several of the deposits in 1996, apparently come from the same person, Manny Bejar. The institution, however, has spelled Mr. Bejar's last name differently in different entries. The court will refer to each entry under the spelling of Mr. Bejar's name used by the institution for that entry.

5. Mr. Higgason's trust account records show a deposit of $65 to his account on September 18, 1996, from M. Begar. The order granting *in forma pauperis* and directing prison officials to prospectively make installment payments of 20% of the previous month's income was entered on October 8, 1996. According to the Tharp memorandum, this order was received by the WVCF Offender Trust Fund office on October 21, 1996. Arguably, because Mr. Higgason sent a $20 initial partial filing fee to the court before the court

ruled on his *in forma* pauperis petition, WVCF officials could have taken the $65.00 deposit into account in making an installment payment in October or even November, 1996. *See* 28 U.S.C. § 1915(b)(2) ("After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.") But because WVCF officials made no payment in those months, or for six months thereafter, the court concludes that WVCF's system of tracking income for PLRA payments did not count that deposit as triggering the need for an installment payment. Accordingly, this court will also not take the September 18, 1996, deposit into account in its review of Mr. Higgason's installment payments.

6. These problems are, in a manner of speaking, self inflicted wounds, given the support afforded to the PLRA before its passage by many senior correctional officials and state attorneys general, including the then Indiana Attorney General.

year-to-date income has been $70.00, 20% of which is $14.00, but WVCF officials have sent a total of $21.62 to the clerk of this court from Mr. Higgason's account. Accordingly, the court will direct the clerk to refund the sum of $7.62 to Mr. Higgason.

For the foregoing reasons, the court **GRANTS** the plaintiff's motions for contempt order and other relief [docket # 227 and docket # 228] to the extent that it:

(1) **ADVISES** WVCF officials that plaintiff James Higgason [IDOC # 856635] paid an initial partial filing fee of $20.00 on the appellate filing fee in this action and that the balance due and owing on July 3, 1997, and currently, is $63.38, and **DIRECTS** the clerk to forward a copy of this order to the Superintendent of the WVCF;

(2) **DIRECTS** the clerk to refund $7.62 to Mr. Higgason, which reflects the overpayment of that amount in installment payments; and

(3) **DENIES** the plaintiff's motions for contempt order and other relief in all other respects.

**IT IS SO ORDERED.**