CHAGARES, Circuit Judge,
dissenting.
The majority holds that under 28 U.S.C. § 1915(b), a prisoner who owes multiple filing fees is required to pay them sequentially, not simultaneously, such that a prisoner pays no more than 20% of the preceding month’s income each month, no matter how many separate filing fees he owes. . I respectfully disagree, and would join the majority of our sister Courts of Appeals that have addressed the issue in holding that § 1915(b) requires a prisoner who has incurred multiple filing fees to pay them simultaneously. An interpretation requiring that fees be paid simultaneously is the most natural reading of the statute and is more consistent with the purpose of the Prison Litigation Reform Act (“PLRA”) than is a sequential approach. Therefore, I respectfully dissent.[1]
I.
A.
In Abdul-Akbar v. McKelvie, we discussed the history and development of the PLRA. See 239 F.3d 307, 311-12 (3d Cir. *437 2001) (en banc). We observed that “[t]he-discretionary power to permit indigent plaintiffs to proceed without first paying a filing fee was initially codified in the federal statutes in 1892.” Id. at 311. Congress enacted the PLRA in 1996, “largely in response to concerns about the heavy volume of frivolous prisoner litigation in the federal courts.” Id. at 312. Because prisoners easily achieved in forma pauperis (“IFP”) status, Congress concluded that they were not “subject to the same economic disincentives to filing meritless cases that face other civil litigants,” and, accordingly, the PLRA instituted a number of reforms designed to “prompt prisoners to ‘stop and think’ before filing a complaint.” Id. at 318.
Among other reforms, the PLRA amended the IFP statute as it applies to prisoners. Under the PLRA, prisoners who qualify for IFP status are no longer excused from paying filing fees altogether, but rather are required to pay them in accordance with 28 U.S.C. § 1915(b), which provides:
(1) [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
(A) the average monthly deposits to the prisoner’s account; or
(B) the average monthly balance in the prisoner’s account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month’s income credited to the prisoner’s account. The agency having custody of the prisoner shall forward payments from the prisoner’s account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
This provision, while clearly (1) requiring prisoners to pay filing fees in full, and (2) permitting prisoners who qualify for IFP status to pay filing fees over time rather than up front, does not explicitly address what happens when a prisoner owes more than one filing fee at once. The majority interprets the statute as requiring sequential payment of multiple filing fees, with a hard payment cap of 20% of a prisoner’s monthly income no matter how many filing fees he owes. I disagree, and believe that the statute requires simultaneous payment of multiple filing fees. A majority of Courts of Appeals having considered this issue support this view. See Pinson v. Samuels, 761 F.3d 1, 7-10 (D.C.Cir.2014) (holding that § 1915(b) requires a prisoner who has incurred multiple filing fees to pay them simultaneously), petition for cert. filed sub nom. Bruce v. Samuels, 83 U.S.L.W. 3640 (U.S. Jan. 16, 2015) (No. 14-844); Christensen v. Big Horn Cnty. Bd. of Cnty. Comm’rs, 374 Fed.Appx. 821, 829-33 (10th Cir.2010) (unpublished) (same); Atchison v. Collins, 288 F.3d 177, 180-81 (5th Cir.2002) (per curiam) (same); Lefkowitz v. Citi-Equity Grp., Inc., 146 F.3d 609, 612 (8th Cir.1998) (same); Newlin v. Helman, 123 F.3d 429, 435-36 (7th Cir.1997) (same), overruled on other grounds, Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir.2000). But see Torres v. O’Quinn, 612 F.3d 237, 242-53 (4th Cir.2010); Whitfield v. Scully, 241 F.3d 264, 275-77 (2d Cir.2001).
B.
The Supreme Court has recently instructed that “reasonable statutory interpretation must account for both ‘the specific context in which ... language is used’ *438 and ‘the broader context of the statute as a whole.’ ” Util. Air Regulatory Grp. v. EPA - U.S. -, 134 S.Ct. 2427, 2442, 189 L.Ed.2d 372 (2014) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (alteration in original)). The Court continued that “[a] statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.’ ” Id. (quoting United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (alteration in original)). This is such a case, where the meaning of a provision, § 1915(b)(2), is clarified by the remainder of § 1915. See Christensen, 374 Fed.Appx. at 829 (“The majority ‘cumulative payment’ or ‘per case’ position with which we agree has been adopted based on standard interpretive principles (construing § 1915(b)(2) in light of the other provisions in § 1915).”). In the past, we have similarly resorted to § 1915 or § 1915(b) “as a whole” to determine the meaning of a provision therein. See, e.g., Hagan v. Rogers, 570 F.3d 146, 155 (3d Cir.2009) (“Section 1915(b)(3) must be read in the context of § 1915(b) as a whole.”); Abdul-Akbar, 239 F.3d at 312, 314 (interpreting § 1915(g) in the context “of the PLRA as a whole”); Santana v. United States, 98 F.3d 752, 756, 757 (3d Cir.1996) (concluding that “the filing fee payment requirements of the PLRA set forth in 28 U.S.C. § 1915(b) do not apply to habeas corpus petitions or to appeals from the denial of such petitions” after considering the PLRA “as a whole”).
The text of § 1915(b)(2), which requires that “[ajfter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month’s income credited to the prisoner’s account,” does not explicitly answer the question of how multiple filing fees should be paid. However, reading § 1915(b)(2) in the context of § 1915(b) as a whole shows that the statute requires simultaneous recoupment of multiple filing fees. It is clear from the text of § 1915(b)(1) and undisputed by the parties that a prisoner is required to pay an initial filing fee for each case or appeal he files— a “per-case” approach — no matter how many other fees he has paid or is paying. See § 1915(b)(1) (requiring that “if a prisoner brings' a civil action or files an appeal in forma pauperis ... [t]he court shall assess and, when funds exist, collect ... an initial partial filing fee.... ”). Accordingly, “[t]he plain text of [§ 1915(b)(1) ] calls for assessment of the initial partial filing fee each time a prisoner ‘brings a civil action or files an appeal.’ ” Pinson, 761 F.3d at 8 (quoting 28 U.S.C. § 1915(b)(1)). I agree with the Government that it is logical to interpret § 1915(b)(2) to require that monthly payments of 20% be made for each case as well, and not for each prisoner, regardless of how many suits or appeals he or she files. See Hendon v. Ramsey, 478 F.Supp.2d 1214, 1219 (S.D.Cal.2007) (“Thus, an initial filing fee is collected each time a prisoner initiates an action, rather than once per prisoner irrespective of the number of actions the prisoner has filed.”). By contrast, reading a sequential (or “per-prisoner”) payment structure into § 1915(b)(2) would be inconsistent with the per-case approach of § 1915(b)(1).
The text of § 1915(b)(2) itself provides further support for a simultaneous recoupment approach, as the provision specifies that the prisoner must make monthly payments of 20 percent “[ajfter payment of the initial partial filing fee.” 28 U.S.C. § 1915(b)(2). If, as is undisputed, a prisoner must pay the initial filing fee for each *439 suit filed, then the prisoner must immediately follow through and pay the monthly installment payments on the amounts remaining for the same action or appeal the prisoner has filed. Put another way, “[b]e-cause the initial partial filing fee imposed in subsection (b)(1) acts as the ‘triggering condition’ for the monthly installments required by subsection (b)(2), the two provisions should be read in tandem.” Pinson, 761 F.3d at 9 (quoting Torres v. O’Quinn, 612 F.3d 237, 256 (4th Cir.2010) (Niemeyer, J., dissenting)). As a result, both § 1915(b)(1) and § 1915(b)(2) apply equally to each action or appeal filed, with no exception in either subsection for multiple filings. See id. (“Given that the initial fee required by subsection (b)(1) applies on a per-case basis, it follows that subsection (b)(2)’s monthly payment obligation likewise applies on a per-case basis.”).
Other provisions of § 1915 similarly reflect a per-case approach. For example, § 1915(a)(2) provides that a “prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefore ... shall submit ... a trust fund account statement ... for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal.” 28 U.S.C. § 1915(a)(2) (emphasis added). In addition, § 1915(e)(2) provided that “[njotwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time” if the court determines that the case is defective. 28 U.S.C. § 1915(e)(2) (emphasis added). Finally, § 1915(f)(1) provides that a court may issue a judgment for costs “at the conclusion of the suit or action.” 28 U.S.C. § 1915(f)(1) (emphasis added). Again, these subsections exemplify the “per-case” approach common to all of § 1915.
For these reasons, I part ways with the majority, and would interpret § 1915(b)(2) to require that prisoners who owe multiple filing fees pay them simultaneously rather than sequentially.
C.
A rule requiring simultaneous recoupment is consistent with the PLRA’s effort to require prisoners to incur a marginal cost for each additional lawsuit they file. By requiring prisoners to bear additional costs for each suit, the PLRA encourages prisoners to absorb a portion of the economic impact of their lawsuit and aggregate their claims in a single suit. It also discourages frivolous lawsuits.
Some of our sister Courts of Appeals have recognized as much in interpreting § 1915(b) to require simultaneous recoupment. See, e.g., Pinson, 761 F.3d at 10 (observing that “the per-case approach comports with the PLRA’s basic object” because “Mapping monthly withdrawals at twenty percent of an inmate’s income, regardless of the number of suits filed, would diminish the deterrent effect of the PLRA once a prisoner files his first action”); Lefkowitz, 146 F.3d at 612 (“Because the PLRA provisions were designed to require prisoners to bear financial responsibility for each action they take, the twenty-percent rule should be applied per case.”); Newlin, 123 F.3d at 436 (holding that prisoners must make monthly payments for multiple filing fees simultaneously because “[otherwise a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and likely avoiding them altogether),” and “[t]he PLRA is designed to require the prisoner to bear some marginal cost for each legal activity”); see also Torres, 612 F.3d at 256 (Niemeyer, J., dissenting) (observing that the majority’s holding, allowing for se *440 quential payment of multiple filing fees, “gives prisoners, in effect, a free ride after they file their first piece of litigation”).
The marginal cost to prisoners of filing additional lawsuits or appeals might not only be delayed, but also might be eliminated entirely, as some of our sister Courts of Appeals have held that “the PLRA fee requirements are not applicable to a released prisoner.” DeBlasio v. Gilmore, 315 F.3d 396, 397 (4th Cir.2003); accord McGann v. Comm’r, Soc. Sec. Admin., 96 F.3d 28, 30 (2d Cir.1996). In DeBlasio, the Court of Appeals for the Fourth Circuit held that, upon a prisoner’s release, his “obligation to pay filing fees is determined by evaluating whether he qualifies under the general in forma pauperis provision of 28 U.S.C. § 1915(a)(1).” 315 F.3d at 397. Section 1915(a)(1) excuses an indigent litigant from prepaying filing fees altogether, provided that the litigant files an affidavit including a statement of his assets and his inability to pay fees. See 28 U.S.C. § 1915(a)(1). Accordingly, if prisoners are released from their payment obligations under the PLRA once they get out of prison, under a sequential payment approach they would be able to postpone payment of all but one of their owed filing fees indefinitely until they are no longer obligated to pay them at all.
Allowing prisoners to postpone or even escape their payment obligations is clearly contrary to the PLRA’s purpose, as it provides virtually no deterrent to filing an infinite number of lawsuits. An interpretation requiring that fees be paid simultaneously is, therefore, more consistent with the purpose of the PLRA.
D.
Finally, I respectfully disagree with the majority that such a reading gives rise to constitutional concerns, either by treading on inmates’ rights under the Eighth Amendment or by barring inmates’ access to the courts.
We have 'observed that the Eighth Amendment requires prisons to provide “humane conditions of confinement” and “ensure that inmates receive adequate food, clothing, shelter, and medical care.” Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir.2010) (quotation marks omitted). I agree with the Government that this obligation mitigates the concern we have expressed with respect to indigent non-prisoners, that they would have to choose between necessities like toothbrushes and a lawsuit. In the prison context, where prisons are obligated to provide such necessities, prisoners need not make this choice.[2] As a result, our sister Courts of Appeals have rejected the argument that a simultaneous approach could violate prisoners’ Eighth Amendment rights. See, e.g., Pinson, 761 F.3d at 9-10; Atchison, 288 F.3d at 181.
Nor would simultaneous recoupment bar inmates’ access to the courts. With regard to the concern the majority raises, that inmates require tools such as pens and paper to file suit, the Supreme Court has made clear that “[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them.” Bounds v. Smith, 430 U.S. 817, 824-25, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Our sister Courts of Appeals have similarly rejected the argument that a simultaneous approach could violate prisoners’ access to the courts. See, e.g., Pinson, 761 F.3d at 9; Lefkowitz, 146 F.3d at 612 (“[W]e agree with our fellow circuits that *441 these fee provisions do not deny prisoners constitutionally guaranteed access to courts.”).
The Court of Appeals in Torres raised a different ground for fearing that simultaneous recoupment would bar access to the courts, expressing concern that a prisoner who was required to pay 100% of his inmate account funds to service his filing fee obligations would not be able to engage in further legal action. But the Court of Appeals for the District of Columbia Circuit effectively addressed this concern in Pinson, explaining that “the PLRA’s safety-valve provision, § 1915(b)(4), separately” ensures that insufficient funds will not' bar inmates from bringing suit. Pinson, 761 F.3d at 8. Section 1915(b)(4) provides that “[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.” Section 1915(b)(2) provides additional protection, because it provides for collection of fees only where a prisoner’s account'exceeds $10.
In light of prisons’ obligations to provide inmates with supplies necessary for humane confinement and meaningful access to the courts, and considering the statutory safeguards the PLRA provides for destitute inmates, I conclude that the canon of constitutional avoidance does not compel sequential recoupment.
II.
For the foregoing reasons, I respectfully dissent.

. I do join my learned colleagues, however, in thanking the attorneys who handled this matter pro bono and in commending them for their excellent representation.

. The Pennsylvania Department of Corrections memorialized this requirement in Policy Statement DC-ADM 815 (effective May 29, 2009).