# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

No.  97-2828MNMI

Kenneth E. Murray,                        *
                                          *
    Appellant,                            *
                                          * Appeal from the United States
vs.                                       * District Court for the
                                          * District of Minnesota
Francis E. Dosal, Clerk                   *
                                          *
    Appellee.

On the court's own motion, the opinion filed July 13, 1998, is
withdrawn and the attached opinion is filed int its stead.

                      July 20, 1998

Order Entered at the Direction of the Court:

Clerk, U.S. Court of Appeals, Eighth Circuit

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  97-2828

_____

Kenneth E. Murray,

        Appellant,

        v.

Francis E. Dosal, Clerk,

        Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Minnesota.

[PUBLISHED]

_____

Submitted:  March 9, 1998
Filed: July 20, 1998

_____

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1] District Judge.

_____

PER CURIAM.

Kenneth Murray filed this petition under the All Writs Act, 28 U.S.C.A. § 1651, alleging the clerk of court violated his constitutional rights by refusing to file a civil rights complaint unless he paid an initial partial filing fee pursuant to the provisions of the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C.A. § 1915 (West Supp. 1998).  Appellee, Francis Dosal, was directed to respond to the petition.  After the

_____

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

response was filed, the district court[2] adopted the report of the magistrate judge[3] and dismissed the petition. This appeal followed. We affirm.

The PLRA was enacted "with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims." Lyon v. Krol, 127 F.3d 763, 764 (8th Cir. 1997) (citing H.R. Conf. Rep. No. 104-378, at 166-67 (1995)). The PLRA "refashioned the procedures prisoners must observe when seeking to proceed IFP [in forma pauperis] in civil actions." Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997).

The PLRA's amendments to 28 U.S.C.A. § 1915 require prisoners who wish to proceed IFP to meet certain requirements imposed by the statute.[4] A prisoner seeking

_____

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

[4]Before the district court can authorize the commencement of any prisoner's suit in forma pauperis, 28 U.S.C. § 1915(a) requires that the prisoner submit (1) an affidavit of poverty that includes a statement of all assets such prisoner possesses, and, in "seeking to bring a civil action," as here, (2) a certified copy of the prisoner's trust fund account statement. Rule 3 of the Federal Rules of Civil Procedure provides that "[a] civil action is commenced by filing a complaint with the court." Accordingly, the PLRA would seem clearly to prevent a prisoner from filing an action in forma pauperis until he has complied with the requirements of subsection (a) of section 1915. This is now the practice, as we understand it, in all district courts in this circuit. Our recent opinion in Garrett v. Clark, however, takes a contrary position, holding that the PLRA allows a prisoner to file the complaint and then satisfy the requirements of section 1915(a) within a reasonable time. No. 97-2789, 1998 WL 337902, at*1 (8th Cir. June 26, 1998). We believe that this is an incorrect interpretation of the statute and is contrary to the policies established by Congress with the enactment of the Prison Litigation Reform Act of 1995. In our view, such a rule will needlessly and improperly create numerous case and docket management problems for the district courts in this circuit. Nevertheless, we are bound by the decision in Garrett. Therefore, although we

IFP status must file an affidavit showing his assets and attesting to his impoverishment, and submit a certified copy of his account statement for the six-month period preceding the filing of the complaint or notice of appeal. 28 U.S.C.A. § 1915(a)(1) & (2). Even though seeking IFP status, the prisoner is required to pay the full amount of the fee. The court assesses and, when funds exist, collects as partial payment of the court fees required by law, an initial partial filing fee of 20% of the greater of: (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal. 28 U.S.C.A. § 1915(b)(1). However, the statute provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C.A. § 1915(b)(4).

After paying the initial filing fee, the prisoner must make monthly payments equal to 20% of the preceding month's income credited to his prison account. 28 U.S.C.A. § 1915(b)(2). So long as the prisoner's account exceeds $10, prison officials are given authority to take the 20 percent. These payments are sent to the clerk of the court. The payments are deducted from the accounts until the full filing fee has been paid.

Since its enactment, a number of circuits have upheld the PLRA against a variety of constitutional challenges. See e.g., Shabazz v. Parsons, 127 F.3d 1246 (10th Cir. 1997); Norton v. Dimazana, 122 F.3d 286 (5th Cir. 1997); Mitchell v. Farcass, 112 F.3d 1483 (11th Cir. 1997); Roller v. Gunn, 107 F.3d 227 (4th Cir. 1997), cert. denied, 118 S. Ct. 192 (1997); Hampton v. Hobbs, 106 F.3d 1281, 1284 (6th Cir. 1997). "They have concluded that its fee requirements do not employ suspect classifications,

_____

would prefer to say, above, that section 1915 requires "prisoners who wish to proceed IFP to provide the information necessary for the calculation and assessment of a partial filing fee before filing a civil lawsuit," we note that Garrett precludes our doing so.

-4-

deprive prisoners of the right to court access, or violate rights to equal protection." Lyon, 127 F.3d at 764-65 (citations omitted).

Murray first contends the filing fee requirements constitute an unconstitutional barrier to access to the courts. He relies primarily on Lewis v. Casey, 518 U.S. 343 (1996), which he contends reaffirmed the fundamental nature of a prisoner's right of access to the courts.[5] He argues the right involved is a fundamental right and this court must employ strict scrutiny in reviewing the restrictions placed on this right by the PLRA.

"Congress has long regulated the access of indigent litigants to the federal judicial system." Roller, 107 F.3d at 230. The imposition of a filing fee, over time if necessary, has been held not to unconstitutionally burden the right to court access. See e.g., In re Williamson, 786 F.2d 1336, 1339-41 (8th Cir. 1986)(Upholding the imposition of partial filing fees on IFP plaintiffs). As the Fourth Circuit noted in Roller, "the right of access to federal courts is not a free-floating right, but rather is subject to Congress' Article III power to set limits on federal jurisdiction." Roller, 107 F.3d at 231. "The Supreme Court has never recognized an 'unlimited rule that an indigent at all times and in all cases has the right to relief without the payment of fees.'" Id. (quoting United States v. Kras, 409 U.S. 434 (1973)).

Further in this case, Murray has failed to show that court access has been impeded. Lyon, 127 F.3d at 765 (Prisoner lacks standing when he fails to show fee requirements imposed by the PLRA have deprived him of his access to the court). Rather, Murray merely argues he should not be forced to choose between spending the limited funds in his prison account on small amenities or on pursuing a civil rights action.

---

[5]Murray also relies heavily on the dissenting opinion of Judge Heaney in Lyon.

Given that both the initial partial fee and subsequent installment amounts are modest, the payments are extracted only in the months when the prisoner's trust fund account exceeds ten dollars, and the fact that the PLRA provides no prisoner shall be prohibited from bringing an action "for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee," we agree that the provisions pass constitutional muster. We find persuasive the reasoning of the Fourth Circuit that:

> [r]equiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, "he has demonstrated an implied evaluation of that suit" that the courts should be entitled to honor.

Roller, 107 F.3d at 233 (citation omitted).

Murray next contends that requiring only prisoners to pay filing fees violates their rights to equal protection of the laws. Neither prisoners nor indigents constitute a suspect class and, as discussed above, the provisions do not implicate a fundamental right. Roller, 107 F.3d at 234; Hampton, 106 F.3d at 1286. Thus, the PLRA's fee requirements are upheld so long as they are rationally related to a legitimate government interest. Clearly, Congress had a legitimate interest in making rules governing the federal court system and a rational basis to believe the fee requirements would serve to curtail abusive prisoner tort, civil rights, and conditions litigation. Mitchell, 112 F.3d at 1488. See also Roller, 107 F.3d at 230 ("In 1995, prisoners brought over 25% of the civil cases filed in the federal district courts.").

Prisoners are not similarly situated to non-prisoners. They have their basic costs of living paid by the government. "They often have free time on their hands that other litigants do not possess. As a result, the federal courts have observed that prisoner

litigation has assumed something of the nature of a 'recreational activity.'" Roller, 107 F.3d at 234 (citations omitted). See also Mitchell, 112 F.3d at 1489 ("Moreover, prisoners have unique incentives to file meritless or frivolous lawsuits, e.g., to attempt to obtain a 'short sabbatical in the nearest federal courthouse,' or to harass prison officials or correctional officers." (citations omitted)).

The fee requirements provide economic incentives that require prisoners to "stop and think" before filing suit. Mitchell, 112 F.3d at 1488. See also Norton, 122 F.3d at 291 ("The fee provisions of the PLRA, in a sense, level the playing field between incarcerated i.f.p. litigants and other litigants in the federal courts."). We find the fee provisions of the PLRA do not violate a prisoner's right to equal protection.

Murray's final contention is that the fee assessment provisions violate his right to due process since prison authorities are given uncontrolled authority to take 20% of the prisoner's account without the prisoner being given notice and an opportunity to be heard, or without an evaluation made regarding the prisoner's ability to pay. Murray relies on Mathews v. Eldridge, 424 U.S. 319 (1976) and Mahers v. Halford, 76 F.3d 951 (8th Cir. 1996), cert. denied, 117 S. Ct. 696 (1997). In this same vein, he also argues the PLRA amendments to § 1915 are constitutionally infirm because there are no procedures provided for determining the propriety of the fee assessment before the funds are withdrawn.

In Mahers, we recognized that prisoners have a property interest in money received from outside sources. Mahers, 76 F.3d at 954. In this case, the record is devoid of information regarding the origin of the funds in Murray's account. Nevertheless, we will start with the proposition that "[p]risoners do have a protected interest in their money." Hampton, 106 F.3d at 1287. Thus, prisoners are entitled to due process before they can be deprived of these funds.

The question is what process is due before money in a prisoner's account can be applied to a filing fee. Mathews requires us to consider three factors: (1) the private

interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. Mathews, 424 U.S. at 335.

We start with the proposition, as we did in Mahers, that incarceration, while it does not deprive prisoners of the protection of the federal Constitution, does result in restrictions and limitations being placed on the prisoner's constitutional rights. Mahers, 76 F.3d at 954 (citations omitted). Although a prisoner has an interest in his funds, he is "not entitled to complete control over [his] money while in prison." Id. Thus, courts, including this court, have approved debit procedures. Mahers, 76 F.3d at 954-56. Mahers involved debits from an inmate's account for restitution obligations. There we noted that "inmates are not absolutely deprived of the benefit of their money when part of it is applied toward their restitution debts." Id. at 954-55.

This statement applies with even more force to this case. Here the prisoner made the voluntary decision to file a civil lawsuit. The funds are being used to pay the filing fee requirements. As the Hampton court noted,

> [t]he funds are being utilized for the prisoner's benefit just as a non-indigent's money is used by him to proceed in federal court. Furthermore, the Act charges a prisoner no more than anyone else who is adjudged able to pay--and under much more generous payment terms. Thus, the prisoner's private interests do not weigh in favor of requiring additional procedures.

Hampton, 107 F.3d at 1287.

There is also very little risk of an erroneous deprivation. The PLRA requires the prisoner to apprize the court of his financial status by filing an affidavit showing his assets and attesting to his impoverishment and providing a certified copy of his account statement. 28 U.S.C.A. § 1915(a)(1) & (2). It is the court and not the prison officials

that assess the filing fee. Id., § 1915(b)(1). Further, the PLRA sets forth the percentage of the money in the prisoner's account that may be taken for the payment of the filing fee. Id., § 1915(b)(1) & (b)(2). The prison officials, or other agency having custody of the prisoner, merely perform the administrative function of deducting the fee from the prisoners' accounts and forwarding that fee to the clerk of court "each time the amount in the account exceeds $10 until the filing fees are paid." Id., § 1915(b)(2).

The government's interest in the fee system, to reduce frivolous prisoner filings by requiring the prisoner to weigh, as other litigants must, the economic cost of filing suit, was discussed in detail above. "This interest, combined with the satisfactory procedures provided and the weak private right in this case, compel the conclusion that the Act does not violate a prisoner's right to procedural due process." Hampton, 106 F.3d at 1288.

For the reasons discussed above, we affirm the district court's decision.

WATERS, Senior District Judge, concurring.

I agree that the Garrett cased filed on June 26, 1998, precludes this panel from reading the PLRA amendments and applying them as we believe they are written, and, thus, I concur in this opinion.

I write this separate concurrence to emphasize my agreement with footnote 4, above, and to express my concern about the effect that the Garrett holding is likely to have on the beneficial affect that the PLRA has already had on the filing by prisoners of largely frivolous lawsuits.

I have been a trial judge in the Western District of Arkansas for almost 17 years. During that period, experience has taught me that, over the years, trial courts have become increasingly burdened by frivolous lawsuits, many, but by no means all, filed

-9-

by prisoners with petty gripes about one thing or another, such as purported constitutional claims that they were furnished with the wrong soap, and the like. Each of these cases, irrespective of how frivolous, require substantial court time, detracting from and delaying legitimate and important litigation before the court.

The Western District of Arkansas encompasses a largely rural area with no major urban areas, and no prison facilities other than county and municipal jails, yet, for the year prior to the PLRA, we had 389 prisoner cases filed, or 41% of our civil docket. At times, the prisoner filings approached 60% of our civil filings. For the year after the PLRA was instituted in the district, prisoner cases dropped to 217, or 20% of our civil docket, a 44% decrease in filings of prisoner cases.

The figures for our sister district to the east, the Eastern District of Arkansas, which has all of the institutions in the Arkansas prison system, also dramatically shows that the PLRA has accomplished what congress intended. For the 12 month period prior to the PLRA, that district had 955 prisoner cases filed, comprising 41% of its civil docket. For the 12 months after the statute became effective, the filings dropped to 869 (33%) and, for the period from July 97 to June 98, there were 733 filings, constituting only 31% of the civil filings.

I am fearful that, after the "jailhouse lawyers" and "recreational filers" learn about Garrett, we will be right back where we started or nearly so. When they learn that they don't have to submit with their complaint the required affidavit and statement of account, most, if not all, will be filed without them. This will likely result in many prisoner lawsuits being filed where there will never be compliance, requiring procedures to be instituted by clerk's offices and district courts, and time spent, to keep the docket cleared of these matters that aren't going anywhere.

If this court is going to prescribe procedures, guidelines or rules for district courts to follow as it did in Henderson v. Norris, 129 F.3d 481 (8th Cir. 1997), I suggest that it would be appropriate and effective, and still provide protection for the

prisoner's rights, for trial courts to be directed to stamp nonconforming papers tendered by a prisoner "received", as most, if not all, district courts in the circuit now do. The clerk could be directed to then notify the prisoner of the deficiencies and PLRA requirements, and give the prisoner 30 days to comply. If there was not compliance during that time, the papers would not be filed and no lawsuit commenced. The papers could then be returned to the prisoner.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Regardless of whether we review this case under a strict scrutiny or rational basis standard, it is my belief that these PLRA provisions are unconstitutional. No one disputes that access to the courts is a fundamental right and that prisoners must have "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Lewis v. Casey, 116 S. Ct. 2174, 2180 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). Yet, the majority effectively holds today that court access for some is more fundamental than court access for others.

The parade of horribles is not hard to imagine and prisoners are now faced with impossible choices: choosing, for example, between spending money to bring a lawsuit after being brutalized or sending money home to a child; making co-payments for needed medical care or suing to protect one's rights. The problems with these provisions are endless; but in upholding the constitutionally of these provisions, the majority, as well as many other circuit courts, have determined that prisoners, like non-prisoners, must make economic choices before filing lawsuits. In my judgment, this argument is flawed because non-prisoners do not have to make such stark choices. Non-prisoners who cannot afford filing fees may proceed IFP. While prisoners, who also possess a fundamental right to court access, do not have the same right to proceed IFP.

Courts have an obligation to protect minority interests when the Constitution is violated by majoritarian will. I am deeply troubled when constitutional rights are trampled in the name of political expediency, and prisoners are certainly an easy political target. What particularly concerns me about today's decision is that it will have little, if any, effect in terms of curbing frivolous litigation. It may, however, prevent important claims from being pursued in federal court for no meaningful reason:

> Although it is true that the number of suits brought by prisoners has increased, there is no indication that the increase has significantly out-paced the increase in the number of people incarcerated in this country nor have the reasons for the increase in claims been established. . . . A list of reasons for any increase in the number of complaints over a simple increase in the number of prisoners would likely include the high incidence of prison overcrowding, a lack of carefully trained correctional officers, and inadequate and frequently unfair internal grievance procedures.

Lyon v. Krol, 127 F.3d 763, 766 & n.6 (Heaney, J., dissenting).

In the final analysis, "the degree of civilization in a society is revealed by entering its prisons." F. Dostoyevsky, The House of the Dead 76 (C. Garnett trans., 1957). Problems within American prisons are well documented. Rather than allow further entrance and examination of prison life, however, today's decision has the potential to prevent important claims from being adjudicated simply because of a prisoner's economic status. It is for this reason, and for the reasons stated above, that I respectfully dissent.

A true copy.

Attest.

-12-

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.