Jack L. LOSEE, et al., Plaintiffs,

v.

Herb MASCHNER, Warden,
et al., Defendants.

No. CIV. 4–97–CV–80117.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 5, 1998.

Jack L. Losee, Iowa State Prison, pro se.

William A. Hill, Des Moines, Iowa, for Defendant.

## REPORT AND RECOMMENDATION

BREMER, District Judge.

This matter comes before the Court on Plaintiff's resisted Motion for Order to the Clerk of Court and Instructions, filed March 11, 1998, and renewed motion filed May 28, 1998, by Plaintiff Jack Losee, an inmate at Iowa State Penitentiary (ISP). Losee brings the underlying action under 42 U.S.C. § 1983 (1994 & West Supp.1997). In this motion, Losee claims the State is violating the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (West Supp. 1998), by improperly collecting payments from his inmate account to apply toward his court filing fees, when the account balance does not exceed $10 on the collection date, and by not notifying him of collection dates. Losee is proceeding pro se. He wants further fee collections from his account enjoined unless his account contains more than $10 on the collection dates, and he seeks money damages for the collections he alleges were improper.

This case was referred to the undersigned on February 5, 1998, for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). On June 10, 1998, Defendants filed a Resistance and Memorandum in Support of Resistance. A hearing was held July 30, 1998. This matter is fully submitted. The Court finds and recommends as follows on the issues presented.

## BACKGROUND

On February 24, 1997, in this action, Losee filed an Application to Proceed *In Forma Pauperis* under 28 U.S.C. § 1915. He filed an affidavit listing his assets and stating he could not pay the filing fees, and he submitted a certified copy of his inmate

account for the preceding six months, as required by § 1915(a)(1), (2). At that time, the balance in his inmate account was $0.35. The Certificate of Inmate Account and Assets, dated February 13, 1997, showed that Losee's account had an average monthly balance of $20.53 during the last six months, and that the average monthly deposits to his account were $14.92. The Court reviewed these documents and determined that Losee had the means to pay an initial partial filing fee of $4.11. The Court granted Losee's motion to proceed *in forma pauperis* in an Initial Review Order on March 14, 1997, and ordered Losee to pay the initial partial filing fee and his share of the balance of the $150 filing fee pursuant to § 1915(b)(1), (2). Because the case had seven plaintiffs, the Court determined Losee's share of the filing fee was $21.43. On April 10, 1997, Losee signed an authorization to debit his inmate account to pay his filing fees. He has paid the initial partial filing fee and presently owes $12.03 for his share of the filing fee.

On April 4, 1997, Losee filed an Application to Proceed *In Forma Pauperis* in case No. 4–97–CV–10219. He filed the required affidavit and a copy of his inmate account. The balance in his account was $5.68. The Certificate of Inmate Account and Assets, dated April 1, 1997, showed that for the last six months, Losee's average account balance was $4.69, and the average monthly deposits to his account were $13.75. The Court determined that Losee had the means to pay an initial partial filing fee of $2.75. In an Initial Review Order filed April 14, 1997, the Court granted Losee's motion to proceed *in forma pauperis* and ordered Losee to pay the initial partial filing fee and the remainder of the fee. Losee has paid the initial partial filing fee and owes $140.60 on the total fee. To transmit the installment payments for Losee's filing fees, ISP's accounting clerks collect money from his inmate account and forward payments to the appropriate Clerk of Court. *See* 28 U.S.C. § 1915(b)(2).

Sharon Scott, an ISP accounting clerk, testified that approximately every 28 days Losee's inmate account is credited with $7.70 in idle pay. From this sum, the inmate buys hygiene and legal-mail supplies. In Losee's account records, the deposit of idle pay is listed as payroll. (*See* Pl.'s Ex. 64.)

After completing the payroll, accounting clerks review each inmate's account and collect funds owed for assessments such as restitution and the incarceration fee. *See* Iowa Code § 910.702 (1998). Scott testified that the incarceration fee is $5 per month for each inmate, but she does not deduct the full amount—or any—from an inmate account, if doing so would leave the balance under $8.

Presently, the collection process is not automated. No particular day is designated for collection of filing-fee payments. Accounting clerks must check and reconcile multiple sets of records before collecting fee payments from inmates' accounts.

Following PLRA requirements, Scott determines the amount to be withdrawn from an inmate's account for a fee payment by calculating 20 percent of the income credited to his account in the previous month. Scott testified that if an inmate owes more than one filing fee, she collects 20 percent of the preceding month's income for each filing fee owed.

Scott testified that when she analyzes an inmate's account to determine if she can collect a payment, she looks back over the period since the last collection. She withdraws no payment if the account has not exceeded $10 in the preceding interval. If, however, the account has exceeded $10 anytime since the last collection period, Scott withdraws a payment, even if on the collection date the balance is less than $10.

If on collection day, an account holds less than the sum calculated for withdrawal, Scott collects whatever is in the account. She tries not to put the account into a negative balance by taking out more

than is in the account. Occasionally, however, an inmate's account becomes overdrawn by mistake, for example when a filing-fee collection is made close in time to a withdrawal for canteen items ordered. Generally, if an inmate's account is overdrawn, his orders for supplies are returned unfiled. He receives no sanctions or other disciplinary action for having an overdrawn account.

After collecting fee payments, Scott sends the money to the applicable Clerk of Court once a month.

The evidence shows the State took filing-fee payments from Losee's account on five dates when the balance was under $10: July 15 and August 7, 1997; and January 1, February 18, and May 12, 1998. In June 1997, Losee's account on two dates had a $12.84 balance, which included $7.70 in idle-pay income. He spent $0.78 on postage and $12.10 on canteen purchases. June ended with Losee's account showing a $0.04 deficit.

In July 1997, Losee's only income was $7.70 in idle pay. His account balance never reached $10. He spent $0.32 on postage and $6.94 on canteen items. On July 15, when his account balance was $5.80, the prison collected $3.08 (based on 20 percent of June's $7.70 income; $1.54 for each fee payment owed) for filing-fee payments for June. The next day, Losee's account was debited for $6.94 for canteen purchases, and the account was $2.68 in the red.

On August 1, 1997, Losee spent $3 for postage, leaving his account overdrawn by $5.68. He received $7.70 in idle pay on August 4. On August 7, when Losee's account was $0.98 in the red, the prison withdrew $3.08 for the two filing fee payments for July, resulting in a $4.06 deficit.

Losee complained in a kite. Scott agreed she had erred by collecting fee payments when Losee's account never had more than $10 in July, and she informed him she would correct the error by not collecting $3.08 from his account the next time he owed filing fees.

The State collected no more fee payments from Losee until January 1998. In December 1997, Losee's income was $67.70[1], and he spent $26.11 on canteen items and $1.83 on postage. Losee started January 1998 with a $36.47 balance in his account. He bought a catalog for $11.89, and spent $17.17 on canteen items and $3.63 on postage. On January 21, when Losee's account held $6.48, Scott collected $6.48 in filing fee payments for December. Scott testified she tried to reimburse Losee for the previous August's collection error by not withdrawing all she could have in January. Scott calculated she could have collected approximately $12 for the two filing fees, based on 20 percent of Losee's December income for each fee due, but she took out only $6.48 for both filing fees.

Twenty percent of Losee's $67.70 December income, however, is approximately $13.54. Scott could have collected twice that sum, or $27.08 for the two filing fees. Subtracting the $3.08 she mistakenly withdrew in August, leaves a possible collection of $24. But by the time the January 21, 1998, collection was made, Losee's balance was only $6.48, the amount Scott believed she could take out under the PLRA without overdrawing the inmate's account.

On February 18, 1998, the State collected $3.08 in filing-fee payments from Losee for January's payments. No collection was made for the sum unpaid in January for the December payment. At collection

---

1. Records show deposits to Losee's account in December 1997 included $7.70 in idle pay and a $60 gift. His account records also show a $1.44 positive adjustment in December. No Eighth Circuit case defines "income" under the PLRA. In calculating Losee's income for the month, the Court has included his idle pay and gift, but not the positive adjustment. *Cf. Lucien v. DeTella,* 141 F.3d 773, 776 (7th Cir.1998) (defining "income" under § 1915(b) as including all deposits to an inmate's account); *Higgason v. Swihart,* 980 F.Supp. 296, 298 n. 2 (N.D.Ind. 1997) (holding under the PLRA, term "income" does not include positive adjustments to inmate's account).

time, the balance in the inmate's account was $7.95. Five days later, Losee bought $5.00 worth of postage stamps. His closing balance in February was a $0.13 deficit. No collection occurred in March or April 1998.

In April, the month before the May 12, 1998, collection, Losee's balance reached a high of $10.05. In May, Losee paid $3.08 for April's filing-fee payment, $1.47 for postage, and $2.84 for canteen items. He finished the month with a negative $0.35 balance.

The following table summarizes information from Losee's account records:

| Month | Collection date | Beginning balance | Highest balance | Ending balance | Deposits |
|---|---|---|---|---|---|
| June (5/31–6/30/97) [2] | 7/15/97 | $ 5.14 | $12.84 | −$ 0.04 | $ 7.70 |
| July (7/1–7/31/97) | 8/07/97 | −$ 0.04 | $ 7.66 | −$ 2.68 | $ 7.70 |
| August (8/1–8/29/97) | | −$ 2.68 | $ 2.02 | −$ 4.06 | $ 7.70 |
| Sept. (8/30–9/30/97) | | −$ 4.06 | $ 8.32 | $ 6.78 | $ 15.40 |
| Oct. (10/1–10/31/97) | | $ 6.78 | $ 8.32 | $ 6.71 | $ 7.70 |
| Nov. (11/1–11/26/97) | | $ 6.71 | $ 7.50 | $ 7.50 | $ 7.70 |
| Dec. (11/27–12/31/97) | 1/21/98 | $ 7.50 | $66.36 | $36.47 | $ 67.70 |
| Jan. (1/1–1/30/98) | 2/28/98 | $36.47 | $36.47 | $ 0.25 | $ 7.70 |
| Feb. (1/31–2/27/98) | | $ 0.25 | $ 7.95 | −$ 0.13 | $ 7.70 |
| March (2/28–3/31/98) | | −$ 0.13 | $ 6.79 | $ 3.27 | $ 7.70 |
| April (4/1–4/30/98) | 5/12/98 | $ 3.27 | $10.05 | −$ 0.66 | $ 7.70 |
| May (5/1–5/29/98) | | −$ 0.66 | $ 5.57 | −$ 0.35 | $ 7.70 |
| June (5/30–6/30/98) | Unknown | −$ 0.35 | $ 7.35 | $ 0.29 | $ 7.70 |
| TOTAL | | | | | $167.80 |
| Monthly average | | $ 4.47 | $14.40 | $ 4.10 | $ 12.91 |

Losee contends the prison violated 28 U.S.C. § 1915(b)(2) by collecting filing-fee payments from his account on July 15 and August 7, 1997; and January 1, February 18, and May 12, 1998, because his account balance was under $10 on those days. As a result, he alleges, he was unable to buy necessities, including toothpaste and legal supplies.

The State argues that its collection from Losee's account on July 15, 1997, and January 1, February 18, and May 12, 1998— days his balance did not exceed $10—did not violate the PLRA's requirements. The State admits, however, that it erred in collecting a payment on August 4, 1997, because Losee's balance was in the red on collection day. The State contends it compensated Losee by adjusting his account on January 21, 1998, to credit him with the amount incorrectly collected in August 1997.

## DISCUSSION

The PLRA amended a previous version of § 1915 to create "monetary and procedural disincentives to the filing of meritless cases." *Christiansen v. Clarke*, 147 F.3d 655, 657 (8th Cir.1998). Congress' main purpose in passing the PLRA was to deter inmates from filing frivolous federal lawsuits by requiring them to pay the full filing fee. *Murray v. Dosal*, 150 F.3d 814, 816 (8th Cir.1998) (per curiam); *Lefkowitz v. Citi–Equity Group*, 146 F.3d 609, 612 (8th Cir.1998); *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir.1997); *Norton v. Dimazana*, 122 F.3d 286, 290 (5th Cir.1997). The PLRA's fee provisions require "indigent

2. The dates in parentheses correspond to the dates shown on Losee's account statements.

(Pl.'s Ex. 64.)

prisoners for the first time to make the same prudential decisions about the merits of their lawsuits that everyone else makes before filing." *Norton,* 122 F.3d at 291, *cited in Murray,* 150 F.3d at 818.

Under the PLRA, a prisoner who seeks to proceed *in forma pauperis* by bringing a civil action or filing an appeal without prepayment of filing fees must file (1) an affidavit listing the inmate's assets and stating that he cannot pay the fees or give security for them, and (2) a certified copy of his inmate account for the preceding six months. § 1915(a)(1), (2).

If a court grants a prisoner's request to proceed *in forma pauperis,* the court must decide the amount an inmate must pay as an initial partial filing fee and then order the prison to collect the initial fee and the inmate's monthly payments on the remaining fee:

> (1).... The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
>> (A) the average monthly deposits to the prisoner's account; or
>>
>> (B) the average monthly balance in the prisoner's account for the 6 month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1), (2). If an inmate, however, has no assets or means to pay the initial partial filing fee, he cannot be barred on this basis from bringing or appealing his action. § 1915(4); *Murray,* 150 F.3d at 817; *Lyon,* 127 F.3d at 764. The chance to pay on an installment basis allows inmates to pay a reduced filing fee, because they "receive, in effect, an interest-free loan to pay the full filing fee." *Christiansen,* 147 F.3d at 658.

Calculation of monthly payments is distinguished from collection under § 1915(b)(2). *Cf. Henderson v. Norris,* 129 F.3d 481, 484 (8th Cir.1997) (per curiam) (distinguishing "assessment," "calculation," and "collection" of appellate filing fees under PLRA). Section 1915(b)(2) describes on what basis calculations are to be made: "20 percent of the preceding month's income." § 1915(b)(2). The section also addresses the collection and remittance of payments from a prisoner's account: Payments shall be forwarded "each time the amount in the account exceeds $10." § 1915(b)(2). *See Murray,* 150 F.3d at 818. (stating monthly installment payments are extracted only in months when prisoner's account exceeds $10).

## I. Balance at Withdrawal

Resolution of Losee's first claim turns on the meaning of the phrase "forward payments ... each time the amount in the account exceeds $10." § 1915(b)(2). The PLRA does not define the phrase. Does it refer, as Losee argues, to the account balance on the day the collection is withdrawn? To decide this matter, the Court will analyze the meaning of the phrase's terms, starting from the end.

### A. "Exceeds $10"

■ The purpose of the provision that allows payment to be taken from a prisoner's account only when the amount in the account exceeds $10 is to help ensure that inmates need not "totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or mental hospital beyond the food, clothing, and lodging already furnished by the state." *Roller v. Gunn,* 107 F.3d 227, 233 (4th Cir.1997), *cert. denied,* 522 U.S. 874, 118 S.Ct. 192, 139 L.Ed.2d 130 (1997) (citation omitted), *quoted on other*

*grounds, Murray,* 150 F.3d at 818. In passing this provision, Congress decided that an amount exceeding $10 would allow inmates to make payments on their filing fees without depriving themselves of "those small amenities of life." *See Roller,* 107 F.3d at 233. Losee does not contest this.

### B. "Amount in the account"

In what form must the amount exceeding $10 appear in the account before filing fees can be collected? Losee contends the "amount" referred to is the same as "balance." Does "amount" as used in § 1915(b)(2) mean "balance"? The Court has found no Eighth Circuit cases addressing this issue.

Besides being applied in § 1915(b)(2), "amount" is used three more times in the PLRA: "In no event shall the filing fee collected exceed the amount of fees permitted by statute," § 1915(b)(3); "the prisoner shall be required to pay the full amount of the costs ordered," § 1915(f)(2)(A); and "[i]n no event shall the costs collected exceed the amount of the costs ordered by the court," § 1915(f)(2)(C). "Amount" is defined as, "The total of two or more quantities; the aggregate." AMERICAN HERITAGE COLLEGE DICTIONARY 45 (Third Edition 1993).

Congress used the word "balance" once in the PLRA: "[T]he average monthly balance in the prisoner's account the 6 month period immediately preceding the filing ...." § 1915(b)(1)(B). The dictionary defines "balance" as, "*Accounting.* a. Equality of totals in the debit and credit sides of an account. b. The difference between such totals, either on the credit or debit side.... Something that is left over; a remainder." AMERICAN HERITAGE COLLEGE DICTIONARY 103. Considering the uses of "amount" and "balance" in the PLRA, and their dictionary definitions, the Court believes the words as used in the statute are related, but not synonymous. The words appear related in much the same way "vehicle" and "automobile" are related. All automobiles are vehicles; vehicles include automobiles; but all vehicles are not automobiles. As used in § 1915(b), all balances are amounts; amounts include balances, but all amounts are not balances.

The reasoning in two cases indicates the amount-in-the-account requirement means either the balance or the total deposits must exceed $10. *Cf. Newlin v. Helman,* 123 F.3d 429, 435 (7th Cir.1997) (holding under § 1915(b)(1) and (4) that court deciding whether inmate must pay initial partial filing fee must consider both inmate's assets and means to pay,. which include balance and monthly income deposited in account), *cert. denied,* 522 U.S. 1054, 118 S.Ct. 707, 139 L.Ed.2d 649 (1998), *followed on other grounds, Lefkowitz,* 146 F.3d at 612, *cited with approval on other grounds, Henderson,* 129 F.3d at 484; *Lucien v. DeTella,* 141 F.3d 773, 776 (7th Cir.1998) (observing that terms "amount in the account," "income," and "deposits" seem to be used as synonyms in § 1915(b); requiring prison to forward 20% of whatever sums entered inmate account in month to pay filing fee, when amount entering inmate account exceeded $10 every month).

In *Newlin,* the inmate's average monthly balance was close to zero, but he had an average monthly income of $43. *Newlin,* 123 F.3d at 435. On the day he filed suit, the inmate had $1.16 in his account, after spending $18.16 shortly before on canteen purchases. *Id.* A few days after filing suit, the inmate's account was credited with $41.33 for prison wages; the next day he emptied the account by making canteen purchases. *Id.* This pattern appeared throughout the months covered in his account statement. *Id.* The supervisor who certified the account statement estimated the inmate had an average monthly balance of $43 during the prior six months. *Id.* "This is incorrect," the court stated, "the average *balance* was close to zero, though [the inmate] had average monthly *income* of $43." *Id.* (emphasis in original). The court held the inmate had the means

to pay the initial partial filing fee because of his periodic income, even though he had only $1.16 in his account on the filing date. *Id.* If it were enough to prevent collection of the filing fee that the inmate lacked assets on the filing date, he "could squander his trust account and avoid the fee" and yet have enough income to pay. *Id.*

Under the *Newlin* court's reasoning, if the "amount in the account" in § 1915(b)(2) meant only the balance on a particular day, for example on collection day or the last day of the month, an inmate could spend all his assets to avoid making filing-fee payments, even though he had enough total deposits to his account during the month to pay. *See Newlin*, 123 F.3d at 435. The total monthly deposits to an inmate's account may exceed $10, although the balance may never reach $10, when an inmate receives deposits on different days, but he spends all his assets soon after the deposits are made. Within a given time frame, whether a prisoner has an account balance over $10 on a particular day, and then spends part of it, or whether he receives $5 deposited to his account one day, spends it all the next day, and then receives $6 deposited to his account, the result is the same: The inmate has available over $10 to spend.

The Eighth and Sixth Circuit Courts of Appeal have each set forth collection procedures under the PLRA. *See Henderson,* 129 F.3d at 481; *McGore v. Wrigglesworth,* 114 F.3d 601, 603 (6th Cir.1997) (noting pro se plaintiff was only party who filed brief). The Sixth Circuit stated a prison could not collect a filing-fee payment under § 1915(b)(2) when an inmate's account balance was under $10, but the court did not explain its basis for this conclusion. *Id.* at 606. The Eighth Circuit did not address the issue, but declined to follow *McGore* on another procedural issue under the PLRA. *Henderson,* 129 F.3d at 484 (disagreeing with *McGore* court's reasoning that PLRA excluded prisoners from obtaining *in forma pauperis* status in appeals court when district court denied

right to proceed on appeal *in forma pauperis* after certifying the appeal would not be taken in good faith; citing *Newlin* with approval on the issue). The two courts also disagreed on the procedure to follow when a prisoner seeking to proceed *in forma pauperis* fails to provide the court with the required affidavit or trust account statement. *Compare Henderson,* 129 F.3d at 484–85 ("failure to file prison account information will result in the assessment of an initial appellate partial fee of $35 or such other amount that is reasonable, based on whatever information the court has about the prisoner's finances"), *with McGore,* 114 F.3d at 605 (holding district court must notify prisoner of deficiency; prisoner has 30 days from date of order to correct error; if prisoner does not comply with order, district court must presume prisoner is not pauper and assess full amount of fees. "The district court must then order the case dismissed for want of prosecution," and the case may not be reinstated despite subsequent payment of filing fees).

The Court does not find in *McGore* a persuasive reason for adopting Losee's proposed interpretation in this case that the PLRA requires the balance in an inmate account to exceed $10 on collection day. The Court recognizes, as discussed below, that various interpretations of the PLRA may lead to use of various procedures.

■ The uses of "balance" and "amount" in different contexts in the PLRA, together with the words' plain meaning and the reasoning of the *Newlin* and *Lucien* courts, persuade this Court that "amount" as used in § 1915(b)(2) refers to more than "balance" alone; "amount" also includes total deposits to an inmate's account over a certain time. The Court finds the "amount in the account" provision under § 1915(b)(2) requires either the balance or the total deposits made to an inmate's account during the period in question to exceed $10. Each alone is sufficient.

Even if the "amount in the account" does not necessarily refer only to the balance, must the amount in the account exceed $10 on the day of collection, as Losee claims? The Court believes the answer comes through analysis of the relationship of two factors: (1) the time period in which the balance or the total deposits must exceed $10; and (2) the period in which the collection must be made. To resolve this issue, the Court will analyze the phrase, "forward payments . . . each time." § 1915(b)(2).

### C. *"Forward payments . . . each time"*

The PLRA does not define the period designated by the word "time" in the phrase "forward payments . . . each time." § 1915(b)(2). Time may be measured by several means, including hours, days, weeks and months.

Section 1915(b)(2)'s first sentence specifies "monthly payments." The terms "monthly payments" and "forward payments . . . each time" may reasonably be viewed as interchangeable as used in § 1915(b)(2), in the sense that "forward payments . . . each time" means payments that occur at monthly intervals.

The provision does not indicate when the monthly collection of payments may be made. Congress did not attempt to micromanage prisons by setting forth detailed accounting procedures in the PLRA, and neither will this Court. The Court recognizes that various procedures can accommodate the PLRA's goals of discouraging inmates' frivolous lawsuits, and providing safeguards that insure inmates do not have to totally deprive themselves of life's amenities to file lawsuits. The following table illustrates the different approaches discussed below. The table does not address any issues relating to the calculation of the amount due based on 20 percent of income.

| Example | May | June |
|---|---|---|
| 1. Hypothetical approach. | Payment due. Account >$10? Collect payment. | |
| 2. ISP's approach. | Payment due. Account >$10? | Collect payment soon after payroll deposited. |
| 3. Losee's approach. | Payment due. Collect payment, only if account >$10 that day. | (Or collect payment here, only if account >$10 that day.) |

■ The Court discerns no requirement in the PLRA that the balance or the total monthly deposits made to the account must exceed $10 on a certain day, for example, on the tenth day of the month. Nor does the PLRA require that the balance or the total monthly deposits exceed $10 for a certain number of days during the month. The Court finds the PLRA requires only that the balance or total monthly deposits must exceed $10 at some undesignated point in time, and for an undesignated length of time, during the month.

Obviously, a collection can occur only after sufficient time has passed to determine if the balance or total deposits have exceeded $10 during the month for which a payment is due. Under certain circumstances, a prison will know this during the month in question, for instance if the account balance exceeds $10 early in the month, or if more than $10 is deposited on the same day each month. A prison can then collect during that month and satisfy PLRA requirements. Example No. 1 above illustrates this situation.

But if a prison cannot count on a prisoner's balance or income surpassing $10 the first part of each month, or at a set day later in the month, officials may choose at their discretion a procedure of waiting until the month has ended to evaluate if the

amount in the account has exceeded $10 during the month. This approach also reasonably fits within the PLRA's requirement.

ISP generally follows this procedure, shown in Example No. 2 above. Scott testified that after payroll is processed, which occurs roughly every 28 days, she begins a collection period by looking at inmates' account records to see if the balances have exceeded $10 since the last collection period. Scott did not indicate whether she checks to see if total deposits to an account exceeded $10 in the month since the last collection period.

A prison thus can follow a procedure of collecting, for example, the May payment in May, or a procedure of collecting the May payment in June, provided in both cases that at some point during May, the amount in the account exceeded $10. This rule does not prejudice inmates. The impact on the prisoner is the same whether the collection comes, for instance, on May 30 or June 3.

In either case, if the balance is the amount in the account that exceeds $10, the balance will necessarily fluctuate during the month as the inmate buys amenities. If the amount in the account exceeding $10 is the total of the monthly deposits, a portion of that amount, too, may be spent before the prison collects the filing-fee payment. In both situations, the prisoner will have had a chance to buy amenities before payment is collected. If the prison waits to the end of the month to determine if the amount in the account topped $10 and to collect, and if a collection can come only on a day the balance exceeds $10, the prisoner can avoid collection by (1) spending deposits before they create a balance over $10 on collection day, or (2) spending down a balance over $10 before the collection date. *See Newlin,* 123 F.3d at 435. A rule prohibiting collection on a day the balance is $10 or under would make meaningless the rule that a collection can be based on total deposits, as well as on a balance, that exceeds $10.

Furthermore, in the case where the prison's procedure calls for making May's collection in June, the Court discerns no basis for reading into the PLRA an extra requirement that the amount in the account, either the balance or total deposits, exceed $10 in June as well as in May. Of course, the amount in the account in June must still exceed $10 for a June collection to be made, but it need not top $10 in June before the prison can complete the May collection in June. *Cf. Lucien,* 141 F.3d at 776 (holding all of inmate's future income, other than sums subject to other court orders, had to be paid over to district court until full $105 filing fee was paid, when full fee would have already been paid, if prison had complied with court's order to transmit payment under PLRA). If the amount in an inmate's account exceeded $10 at some point in May, the inmate knows a collection will be made, and he should save money in his account to make the payment. *See Lucien,* 141 F.3d at 776.

For these reasons, the Court finds the PLRA's requirements are satisfied if at anytime during the month, the amount in the account exceeds $10; the amount in the account does not have to exceed $10 on a collection day. With these principals in mind, the Court will analyze the State's collections from Losee's inmate account from June 1997 to May 1998.

### D. Period for analysis

To determine whether the amount in Losee's account exceeded $10 for each month a collection was made, the Court must decide as a threshold matter whether to group the data by collection periods, pay periods, or calendar months. Scott testified she looks at whether an account balance had climbed over $10 since filing fees were collected after the previous pay period. She uses collection periods, which do not correlate exactly to either pay periods or calendar months, as the time frame. For the Court's analysis, however, classifying account data by collection periods is

unsatisfactory for two reasons. First, the only evidence in the record showing the dates to use in analyzing collection periods are the collection dates listed in Losee's account records. During those months, however, when the State decided it could not collect from Losee's account under the PLRA, his records show no collection dates. For those months, the Court has no way to gauge the beginning and ending dates for each collection period. .

The second reason analyzing by collection periods is unsatisfactory is that because inmates receive idle pay approximately every 28 days—sometimes more often—and no set date exists for collections. The state could conceivably collect twice in a calendar month. This could pose a problem given § 1915(b)(2)'s provision for monthly payments. This problem leads the Court to also disfavor analyzing by pay periods.

Grouping data by calendar month complies with the statutory language referring to monthly fee payments, and provides uniformity even if the number of pay periods in a year changes later. The Court, therefore, will analyze Losee's account deposits and balances by calendar month, as shown in the following table:

| Month | Collection date | Month's total deposits | Month's balance ever >$10? | Balance immediately before collection | Amount collected |
|---|---|---|---|---|---|
| June 1997 | 7/15/97 | $ 7.70 | Yes | $5.80 | $1.54, $1.54 |
| July 1997 | 8/07/97 | $ 7.70 | No | − $0.98 | $1.54, $1.54 |
| Aug.1997 | None | $ 7.70 | No | | None |
| Sept.1997 | None [3] | $ 15.40 | No | | None |
| Oct.1997 | None | $ 7.70 | No | | None |
| Nov.1997 | None | $ 7.70 | No | | None |
| Dec.1997 | 1/21/98 | $ 67.70 | Yes | $6.48 | $3.24, $3.24 |
| Jan.1998 | 2/18/98 | $ 7.95 | Yes | $7.95 | $1.54, $1.54 |
| Feb.1998 | None | $ 7.70 | No | | None |
| March 1998 | None | $ 7.70 | No | | None |
| April 1998 | 5/12/98 | $ 7.70 | Yes | $5.57 | $1.54, $1.54 |
| May 1998 | None | $ 7.70 | No | | None |
| TOTAL | | $160.35 | | | $18.80 |

Aside from the collection in August 1997, the State did not wrongfully withdraw any filing-fee payments from Losee's account by collecting for a month in which neither total deposits nor the balance exceeded $10. As shown in the table, the balance in Losee's account exceeded $10 at some point during each of the remaining months for which the State collected fee payments.

Alternatively, if it is held the PLRA requires that payment be collected only during a month in which payment is due, which means, for example, that the May payment must be collected in May, the Court finds that, except for the error in collecting for July 1997, the State could have made the same collections it actually made, without violating the PLRA. June 1997's balance exceeded $10, and the State therefore could have collected fee payments in June. Because December 1997's total deposits ($67.70) and top balance ($66.36) were above $10 on December 29,

3. In September 1997, Losee received idle-pay deposits on September 2 and 29 of $7.70 on each date. The balance in his inmate account never exceeded $10 that month, but because his September deposits totaled $15.40, thus exceeding $10, the prison could have collected a September filing-fee payment.

the State could have collected December's payments after that date. January 1998's top balance was $36.43, and therefore the State could have collected January's payments that month. Finally, April 1998's balance was $10.05 both on April 10 and on April 16 to 20. The State thus could have collected April's fee payments in April.

The State's procedure of collecting 20 percent of the preceding month's income per case rather than per inmate account appears reasonable. *See Lefkowitz,* 146 F.3d at 612 (following *Newlin,* 123 F.3d at 436 (7th Cir.1997)).

The Court analyzed Losee's submitted affidavit listing his assets and the certified copy of his inmate account for the preceding six months and assessed an initial partial filing fee under 28 U.S.C. § 1915(b). When Losee filed his request to proceed *in forma pauperis,* he did not proceed under § 1915(4), which requires an assertion that he had neither the assets nor means to pay the initial partial filing fee. Losee is not challenging the assessment of the initial partial filing fee, and he has paid that $4.11 fee; he thus does not claim that funds did not exist in his account to pay the initial partial filing fee. *See* § 1915(b)(1). Nor does he claim the monthly $7.70 he receives in idle pay is inadequate to meet his legal and hygiene needs. His average monthly income from June 1997 through June 1998 was $12.91. His average top monthly balance during that period was $14.40.

■ Although Losee claims he is being denied necessities, the record shows that during the five months in which the State withdrew filing-fee payments from his account, he spent a total of $13.42 on postage and $38.84 on amenities, including $26.95 for canteen items and $11.89 for a catalog. In the remaining eight months, he spent a total $68.68 on amenities and $12.03 on postage. He allocated his income between his hygiene and legal needs in the proportion he chose. During this time period, Losee has paid $18.80 in filing fees for both cases. Losee has not shown any deprivation of adequate personal hygiene conditions over a lengthy time period. *See Tokar v. Armontrout,* 97 F.3d 1078, 1082 (8th Cir.1996); *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989). Nor has he alleged or shown he suffered actual injury fairly traceable to the State's actions that abridged his right of access to court. *See Lyon,* 127 F.3d at 765 (following *Lewis v. Casey,* 518 U.S. 343, 349–50, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). The Court notes the PLRA's requirements are not an unconstitutional barrier to access to the courts. *Murray,* 150 F.3d at 818.

From June 1997 through June 1998, Losee's total income was $167.80. Twenty percent of that is $33.56. If the prison had taken Losee's filing fee payments off the top of his income every month, as the *Newlin* court ordered, his $21.43 filing fee in this case would have been paid by now. *Newlin,* 123 F.3d at 435–36 ("The assessment of $8.60 [initial partial filing fee] should have been immediate, and its collection should have come off the top of the next deposit of prison wages, followed by 20 percent of each succeeding month's income until $150 has been paid.") Instead, Losee still owes $12.03.

*Newlin* is distinguished from this case, in that the inmate in *Newlin* received monthly deposits of $43 in wages for prison work. *Newlin,* 123 F.3d at 435. Losee's regular monthly pay, by contrast, is $7.70; the lump-sum gift of $60 in December 1997 raised his average income significantly. If Losee's filing-fee payments were taken off the top of his monthly income, without regard to the amount in his account for the month, such a procedure could in some months violate the PLRA's requirement that the amount in the account exceed $10. Losee was not required to save his $60 gift to make filing-fee payments.

In months when the only amount credited to Losee's account is his $7.70 idle pay, and his account balance does not rise to $10, Losee will owe no payment on his filing fee. This, in fact, occurred in the

months when the State withdrew no collections. The exception was August 1997, when the State mistakenly collected funds from Losee's account. The previous table shows that, if, as Losee argues, the PLRA prohibits the State from collecting payments on days his balance does not exceed $10, no collections could have been made from his account from June 1997 to June 1998.

The Court finds that the State's collection of funds from Losee's account falls within the parameters set by § 1915(b)(2). Moreover, the Court finds Losee sustained no damages. During the period at issue, the deposits to his account totaled $167.80, but he paid only $18.80 in filing fees for his two cases.

*II. Notice*

At the hearing July 30, 1998, Losee challenged the State's practice of collecting filing-fee payments on an unspecified date without notice to him. He argued he could better plan the timing of his spending if he knew the upcoming collection date.

 Inmates "are not entitled to complete control over their money while in prison." *Mahers v. Halford,* 76 F.3d 951, 954 (8th Cir.1995) (approving debit procedures for restitution), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). By filing a request to proceed *in forma pauperis,* a prisoner consents to deduction of the initial partial filing fee and the remaining installments from his account by prison officials. *See Henderson,* 129 F.3d at 484. An inmate does not have the prerogative of directing when and how the prison collects and transmits the fee payment. *Newlin,* 123 F.3d at 436.

 Losee signed an authorization form consenting to filing-fee collections. The statute has no notice requirement. Losee knows the State collects fee payments shortly after crediting inmate accounts with idle pay each month. This knowledge gives him notice of the general time when a collection will occur, if his account balance or total monthly deposits have exceeded $10. The Court finds Losee is not entitled to notice of the exact date the State will collect a filing-fee payment from his account. *See Murray,* 150 F.3d at 819 (holding PLRA's procedures, including notice provisions, do not violate a prisoner's right to procedural due process).

**RECOMMENDATION**

For the reasons discussed above, the Court finds the State did not violate the PLRA by collecting filing-fee payments from Losee's account on days his balance did not exceed $10, or by not notifying Losee of collection dates. The adjustment to Losee's account made in January 1998 to compensate him for the negligent withdrawal of August 1997, although belated[4], was sufficient remedy. Negligence is not compensable under 42 U.S.C. § 1983. *Daniels v. Williams,* 474 U.S. 327, 332–34, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Plaintiff's Motion should be denied.

IT IS RESPECTFULLY RECOMMENDED, under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion be denied.

**ORDER**

IT IS ORDERED that the parties have until **October 28, 1998,** to file written objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir.1990); *Wade for Robinson v. Callahan,* 976 F.Supp. 1269, 1276 (E.D.Mo.1997). Such extensions will be freely granted. Any objections filed must identify the specific portions of the Report

---

**4.** The State should refund as quickly as possible any inmate's funds collected in error. The inmate should not have to wait for reimbursement an indefinite time, which in this case turned out to be five months.

and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed.R.Civ.P. 72; *Thompson,* 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994); *Halpin v. Shalala,* 999 F.2d 342, 345 & n. 1, 346 (8th Cir.1993); *Thompson,* 897 F.2d at 357.

IT IS SO ORDERED.