OPINION OF THE COURT
Emily Jane Goodman, J.
Petitioner, Raymond Gomez, is a New York State prisoner *817 who seeks to commence a proceeding under the Freedom of Information Law (FOIL) and further seeks leave to do so in forma pauperis, as a poor person entitled to have an index number issued by the clerk of this court without payment of a fee. (See, CPLR 1101 [i].) This decision in no way addresses the underlying issues of Mr. Gomez’s FOIL application or the surrounding facts and law; it is limited strictly to the question raised by the court sua sponte as to the constitutionality of CPLR 1101 (f).
CPLR 1101 provides a statutory scheme whereby the costs of commencing an action or proceeding are waived for an indigent party. Such a party applies for poor person status by filing a form affidavit attesting that he or she is unable to pay the court costs, fees and expenses necessary for commencing an action or proceeding. (See, CPLR 1101 [a], [d].) The court thereafter enters an order either approving or denying the application in its discretion. (See, CPLR 1101 [d].)
The discretion to waive court costs, however, is removed from the court if the party applying for poor person status is a prison inmate. An inmate wishing to apply for poor person status does so by filing an affidavit attesting that he or she is unable to pay the costs, fees and expenses necessary for commencing an action or proceeding. The statute also requires the court to obtain a certified copy of the inmate’s trust fund account statement for the past six months as additional support of income status, as well as the inmate’s affidavit documenting an inability to pay the court costs. (See, CPLR 1101 [f] [2].) Thereafter, “the court may permit the inmate to pay a reduced filing fee, the minimum of which shall not be less than fifteen dollars and the maximum * * * shall not be more than fifty dollars.” (CPLR 1101 [f] [2].)
While the court has some discretion to reduce and/or defer payment of the fee if “exceptional circumstances render the inmate unable to pay any fee” (CPLR 1101 [f] [2]), there can be no waiver, and the State acquires a lien against the inmate’s prison trust fund. “[T]he difference between the amount of the reduced filing fee and the amount paid by the inmate in the initial partial payment shall be assessed against the inmate as an outstanding obligation to be collected either by the superintendent or the municipal official of the facility at which the inmate is confined.” (CPLR 1101 [f] [2].) By contrast, where noninmates are granted poor person status, as they almost always are, they are freed of paying costs and fees in commencing litigation. They may be required to repay costs and *818 fees in the case of winning a judgment or settlement and only if the court in its discretion directs such payment. (See, CPLR 1102 [d].)
Inmate Gomez has applied for poor person status and avers that he is unable to pay the costs, fees and expenses necessary to bring his FOIL petition, which seeks no money damages. Additionally, a copy of his prison trust fund account statement has been provided and shows that Mr. Gomez has a zero “spendable balance.”
This court can discern no rational basis for the State discriminating between poor persons who are not incarcerated and poor persons who are incarcerated, such as petitioner Gomez. Because the constitutionality of the statutory provision relating to inmates is in question, and pursuant to CPLR 1012 (b), this court invited the intervention of the Attorney General, who appeared and has submitted a memorandum of law in defense of the constitutionality of the statute.
The Attorney General (AG) concedes that the Equal Protection Clause of both the Federal and State Constitutions requires treating similarly situated persons similarly. The AG argues first, however, citing Allen v Cuomo (100 F3d 253 [2d Cir 1996]), that the imposition of the nonwaivable filing fee on inmate applicants only, under CPLR 1101 (f), does not violate equal protection guarantees because inmates are not similarly situated to noninmates.
The case of Allen v Cuomo (supra) is distinguishable from the present case. In Allen v Cuomo (100 F3d 253, 260, supra), plaintiff inmates brought a class action under 42 USC § 1983, challenging the constitutionality of a Department of Correctional Services regulation which imposed a $5 surcharge on inmates who had committed serious prison violations. The plaintiffs alleged that the surcharge was violative of equal protection guarantees because it did not explicitly contain a hardship waiver for indigent inmates even though other mandatory surcharges imposed by the State of New York did provide for such waivers. (See, id.) Contrary to what the AG argues, the Court of Appeals did not reason so broadly as to conclude that for all purposes, inmates are not similarly situated to noninmates. Rather, what the Court of Appeals specifically stated was that “[i]nmates are not similarly situated to unincarcerated persons subject to other surcharges * * * The rights of prisoners are necessarily limited because of their incarceration, not to mention that all their essential needs, such as food, shelter, clothing and medical care are provided by the state.” (Allen v Cuomo, supra, 100 F3d, at 260-261.)
*819 Thus, the Court of Appeals was highlighting first that the surcharge imposed on prisoners differed from surcharges imposed by the State. In Allen (supra), there was, of course, no other group in existence which was similarly situated to the prisoners subject to the prison surcharge. The class of inmates was sui generis and could not be compared with any other group, because, by definition, to be a prisoner violating the facility’s rules and therefore subject to the surcharge, one had to be a prisoner.
The Court of Appeals also highlighted that inmates subject to the prison surcharge were not similarly situated to noninmates subject to State surcharges because the State pays for basic needs of inmates. In the present issue, however, all plaintiffs or petitioners, free or incarcerated, are precisely similarly situated through the common denominator of indigency and the impact of that indigency in commencing civil litigation which may have nothing whatever to do with prison. That an inmate has his or her essential needs provided by the State does not make him or her any less poor for purposes of applying for poor person status in filing an action. In fact, almost all individuals applying for poor person status, who are noninmates, are recipients of public assistance for some or all of their essential needs. An inmate’s receipt of food and shelter is not a windfall which should render the inmate ineligible for the poor person status afforded to poor noninmates. In this court’s view, poor inmates are similarly situated to poor noninmates.
The AG argues next that even if inmates and noninmates are similarly situated, the State has a rational basis for distinguishing between them because requiring inmates to pay filing fees is rationally related to a legitimate State interest in discouraging frivolous lawsuits by prisoners. Even though the New York statute makes no mention of such intent, the AG cites to Murray v Dosal (150 F3d 814 [8th Cir 1998], cert denied 526 US 1070 [1999]), wherein the court upheld the constitutionality of a provision of the Prison Litigation Reform Act of 1995 (PLRA) (28 USC § 1915 et seq.), which provision requires prisoners wishing to proceed in forma pauperis in civil actions to pay a partial filing fee.* The Eighth Circuit Court of Appeals reasoned that Congress had a legitimate interest in making rules governing the Federal court system and a rational basis *820 to believe that the fee requirement would serve to curtail abusive prisoner tort, civil rights, and conditions litigation in Federal court. (See, Murray v Dosal, supra, 150 F3d, at 818; see also, Roller v Gunn, 107 F3d 227, 230.) Thus, the PLRA was specifically enacted to discourage lawsuits brought in Federal court by inmates. In the instant case, review of the legislative history of CPLR 1101 (f) reveals no such intent to curtail frivolous prisoner suits within the State court. The purpose behind CPLR 1101, which is to protect the rights of poor persons to bring civil actions, is thwarted by the importation of the rationale behind the PLRA.
Prison inmates, no less than other persons, are to be afforded unhampered and equal access to the legal system. Insofar as CPLR 1101 (f) mandates immediate or deferred payment without possibility of discretionary waiver only if the movant is an indigent inmate, said requirement violates both the United States Constitution and the New York Constitution. (See, US Const, 14th Amend, § 1; NY Const, art I, § 11.)
The clerk of the court is directed to issue an index number to plaintiff free of charge as he is a poor person within the meaning of CPLR 1101.

 See also, Nicholas v Tucker, 114 F3d 17, 20 (2d Cir 1997), cert denied sub nom. Nicholas v Miller, 523 US 1126 (1998) (upholding the constitutionality of PLEA under equal protection challenge).